SLIP OPINION

# SUPREME COURT OF ARKANSAS

No. CV–13–936

| | |
|---|---|
| PETER BRAVE<br><br>                  APPELLANT<br><br>V.<br><br><br>MARIE BRAVE<br><br>                  APPELLEE | Opinion Delivered April 17, 2014<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTEENTH DIVISION [NO. 60DR-2010-5539]<br><br>HONORABLE ELLEN B. BRANTLEY, JUDGE<br><br><u>AFFIRMED; MOTION TO DISMISS DENIED; COURT OF APPEALS' OPINION VACATED.</u> |

### CLIFF HOOFMAN, Associate Justice

Appellant Peter Brave ("Peter") appeals from the divorce decree entered by the Pulaski County Circuit Court on December 30, 2011, and the order on a posttrial motion to make additional findings of fact and to reconsider the divorce decree, filed on January 30, 2012. Appellee Marie Brave ("Marie") filed a motion to dismiss the appeal. The court of appeals reversed and remanded the case to the circuit court, after denying the motion to dismiss the appeal, in a 4–2 decision. *See Brave v. Brave*, 2013 Ark. App. 542, ___ S.W.3d ___. Marie petitioned this court for review, which this court granted, and we accepted jurisdiction of this appeal pursuant to Arkansas Supreme Court Rule 1-2(e). When this court grants a petition for review, we treat the appeal as if it had been originally filed in this court. *See McNutt v. Yates*, 2013 Ark. 427. We granted Marie's motion to file substituted briefs, and both Marie

SLIP OPINION

and Peter filed supplemental briefs. On appeal, Peter contends that (1) the circuit court committed reversible error by dividing the goodwill in Brave New Restaurant, despite the testimony largely indicating that the goodwill was personal to him, and (2) the circuit court committed reversible error by "double dipping" into the same stream of his future income when it divided the goodwill of Brave New Restaurant and gave Marie alimony. We deny the motion to dismiss appeal, affirm the circuit court, and vacate the court of appeals' opinion.

This case arose after Peter filed his complaint for divorce on November 24, 2010. The couple had been married for more than twenty years and have two children. Peter and Marie were co-owners of Brave New Restaurant. The division of the restaurant, specifically any goodwill and characterization thereof, is the subject of this appeal. In the divorce decree filed on December 30, 2011, Peter was ordered to pay $3,000 per month in child support until the last minor child reached 18 or graduated from high school; $5,000 per month in long-term alimony; and $5,000 per month until all of the $420,000, including statutory interest, attributable to the division of the restaurant, was paid in full.[1] The $420,000 represented Marie's share of the Brave New Restaurant, after the court found that the value of the real estate was $495,000, and the value of Brave, Incorporated d/b/a Brave New Restaurant, including the furniture, fixtures, goodwill and equipment, was $895,000. After deducting the $550,000 debt on the property, the circuit court found that the net value of the business,

---

[1]Since Peter's arguments on appeal involve only the valuation and characterization of any goodwill, a detailed understanding of every issue and each witnesses' testimony throughout the divorce proceeding is unnecessary.

SLIP OPINION

including the real property, was $840,000.

At the divorce hearing, Peter testified that Marie was a fifty-percent owner of Brave, Inc., and that Marie initially assisted with the restaurant but became less involved after the children were born. Peter introduced the testimony of Gus Dobbs ("Dobbs"), co-owner with his wife of E.K. Williams and Company. Dobbs testified that his company provided accounting and business-consultation services to the Braves. While Dobbs testified that he is not an accountant, his wife is an agent enrolled to practice before the Internal Revenue Service and prepares the tax returns. He prepared an evaluation of the business that was introduced as an exhibit at the hearing. In relevant part, he testified as follows:

[DOBBS:]    If you look on page three, you'll see that I did a EBITDA valuation of the business -- EBITDA means before interest, taxes, depreciation and amortization -- and derived a value of $819,057 for the business. When I did this valuation, the question that I was asked is if I sold my business how's it going to come out, and Peter asked me to figure that out for him and so that's what I did. I figured it out, and the direction that I came from was a little bit different because that question was a different question. That is, you know, if we sold our business, if we got out, I mean what am I going to have left over. That's -- that's the way that I came about this.

Since I did not value the property, I did not know what that value was and they did not go out and get a property valuation. So, therefore, what I came up with was a difference number because I knew the assets, and liabilities, and the goodwill value, and basically told them that if -- you know, that at that point in time if they sold the business that I felt like they could derive $268,877 -- you know, after it was all done.

[MS. JAMES:]  Okay. That value includes how much goodwill?

[DOBBS:]    The goodwill part is the value of the business, which is $819,057. That has no -- no fixtures, furniture, equipment, anything in it. That's just the business itself.

[MS. JAMES:]  Okay. So, basically, on your report you -- there's $819,057 on number one that says business.

[DOBBS:] Right.

. . . .

[MS. JAMES:] Okay. And then you had equipment and fixtures at fair market value of $82,330?

[DOBBS:] Right.

. . . .

[MS. JAMES:] Okay. And so if you took goodwill out of this -- if I do the math in my head -- if you said your grand total was $268,877, but if you took goodwill out of it of $819,057, it would have a negative $550,000 equity; is that correct?

[DOBBS:] That's a weird way to look at it, but it's not incorrect.

. . . .

[MS. LUEKEN:] Now, when you prepared this -- what you're calling a business valuation -- and you included in there, you said of particular importance is -- you know, Peter Brave being part of the business.

[DOBBS:] Right.

[MS. LUEKEN:] But you made an adjustment when you valued this business by putting in a high salary for him, didn't you? $120,000?

[DOBBS:] I think you're referring to the adjustment in the adjustment to EBITDA section, and essentially the way it works is -- pardon me. You have to take out the present owner and put in the operation of a new owner.

[MS. LUEKEN:] Okay. And so you did that?

[DOBBS:] I did that, and in my valuation the way my method is that I always put myself in the place of -- unless I have a specific buyer, for example, and I was working for the buyer, I put myself in that place and I say okay what's it going to take. And that's where that came from.

[MS. LUEKEN:] So my question to you again is you have already calculated the replacement for Peter if that business was sold?

[DOBBS:] I calculated an operator for the business, and that operator included a somewhat -- you know, actually as I told you, two people.

At the circuit court's hearing announcing its oral ruling, Peter announced, through counsel, his intention to appeal the valuation of the business and to request a stay pending an appeal. Peter subsequently filed a motion to make an additional finding of fact and to reconsider the decree on January 6, 2012, and a hearing on the motion was held on January 30, 2012. In his motion, Peter requested the circuit court to state a specific amount of

goodwill and to reconsider either that the characterization of goodwill should be personal or that the amount of alimony should be adjusted. After the circuit court heard oral argument from both parties, the circuit court announced its ruling, and its ruling from the bench helps to clarify the rationale for its findings in the subsequent written order. The circuit court recognized that personal goodwill has not been expanded to this type of business in Arkansas and that it may be appropriate under certain cases like this one. However, the court stated,

> On the other hand, the testimony that came in, in regard to valuation, is not helpful, in my opinion, to the argument that we should recognize personal goodwill. And this is what I mean, which is ordinarily the testimony that you get in a divorce case about valuing either a business or a practice is testimony that has been developed solely for the purpose of litigation. This case is a little bit different in the sense that the testimony, as I recollect it, was that while Mr. Brave may have asked the witness what he thought the business would be worth for the purpose of litigation, he didn't phrase it to the witness that way. He just simply said if I want to sell my business, what could I sell it for. Well, here is the deal. From the standpoint of a judge, that's the perfect witness. The person that comes in to say this is my belief based on my assessment of what this would sell for in the open market. So that was good testimony.

Additionally, the circuit court stated that it was reducing the monthly alimony award from $5,000 to $4,000. Upon further inquiry, the circuit court additionally stated, "I'm saying that I don't have any basis to allocate it between personal and corporate. . . . I'm finding it's corporate since he testified that's what the business could be sold for." Furthermore, the circuit court stated that it took Peter's argument regarding "double dipping" into consideration in reducing the amount of alimony.

On the same day, the circuit court filed an order conforming with its oral ruling, denying the motion to make a specific finding concerning the amount of goodwill, finding that the goodwill is corporate goodwill, denying Peter's "argument that splitting the goodwill

5

and awarding alimony based on Plaintiff's future income constitutes impermissible 'double dipping,'" and reducing the amount of alimony to $4,000 per month.

Peter filed his notice of appeal on February 8, 2012. Additionally, Peter filed a motion to stay the judgment on February 16, 2012, and Marie filed a motion for contempt for nonpayment on March 30, 2012.[2] The circuit court filed an order denying the stay pending appeal, ordering Peter to make all back-payments and future payments as set in the divorce decree. Additionally, the circuit court specifically held that "[a]ll payments made by Plaintiff to Defendant pursuant [to] the judgment on the restaurant are recognized to be involuntary." Furthermore, the court denied Marie's motion for contempt.

Marie filed a motion to dismiss the appeal on April 8, 2013, alleging that this court lacks jurisdiction since Peter made three voluntary payments in partial satisfaction of the judgment. The Arkansas Court of Appeals passed the motion on May 1, 2013, for consideration when the case was submitted. The court of appeals denied Marie's motion in a footnote in the majority opinion. Since the motion raises issues of jurisdiction, we first address this motion before addressing the merits on appeal.

Marie argues that Peter paid $10,000 on January 1, 2012; $10,000 on February 1, 2012; and $5,000 on February 15, 2012. Marie cites to this court's holding in *Hall v. Hall*, as support for her argument. *See Hall v. Hall*, 2012 Ark. 429. In *Hall*, Justin Hall ("Justin") was

---

[2]On January 9, 2013, the Arkansas Court of Appeals granted an unopposed motion to correct the record on appeal and remanded the case for the circuit court to settle the record. A supplemental record was filed to include all relevant motions and orders that were filed in the circuit court.

ordered to pay his ex-wife, Tammye Hall ("Tammye"), $68,691.84 thirty days after the judgment and another $100,000 almost three months after the judgment. *Id*. Justin made the first payment and admitted that he did so voluntarily. *Id*. After Tammye filed a notice of appeal, Justin cross-appealed. *Id*. This court found that "Justin's payment was a voluntary acquiescence to the judgment against him" and granted the motion to dismiss the cross-appeal. *Id*. Justin made a substantial payment in compliance with the judgment, did not try to reserve his rights or attempt to designate that his payment was going to only one part of the judgment, and did not try to post a supersedeas bond or present any argument that he was unable to do so. *Id*.

Unlike the circumstances in *Hall*, Peter announced from the beginning his intention to appeal and filed a motion to stay the judgment pending appeal. Furthermore, Peter did not admit that his payments were voluntary as Justin did in *Hall*. In fact, the circuit court specifically found in its order denying the motion to stay that "[a]ll payments made by Plaintiff to Defendant pursuant [to] the judgment on the restaurant are recognized to be involuntary." As such, we do not think that Peter's actions were a voluntary acquiescence to the judgment to bar this appeal, and we deny the motion to dismiss the appeal.

Peter contends in his first point on appeal that the circuit court erred in holding that the goodwill was corporate goodwill and dividing it as marital property rather than holding that it was personal to him. On appeal, divorce cases are reviewed de novo. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). With respect to the division of property, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous, or against

7

SLIP OPINION

the preponderance of the evidence; the division of property itself is also reviewed and the same standard applies. *Id*. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Kelly v. Kelly*, 2011 Ark. 259, 381 S.W.3d 817. We give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id*.

In *Wilson v. Wilson*, this court adopted the Nebraska Supreme Court's analysis regarding whether goodwill is an asset and is marital property subject to division. *Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987).

> The court in *Taylor* pointed to the difficulty that arises in valuing a professional practice when goodwill is likely to depend on the professional reputation and continuing presence of a particular individual in that practice. . . . [*Taylor v. Taylor*, 222 Neb. 721, 729, 386 N.W.2d 851, 857 (1986).] In a further discussion of that point, the court said:
>
>> [W]here goodwill is a marketable business asset distinct from the personal reputation of a particular individual, as is usually the case with many commercial enterprises, that goodwill has an immediately discernible value as an asset of the business and may be identified as an amount reflected in a sale or transfer of such business. On the other hand, if goodwill depends on the continued presence of a particular individual, such goodwill, by definition, is not a marketable asset distinct from the individual. Any value which attaches to the entity solely as a result of personal goodwill represents nothing more than probable future earning capacity, which, although relevant in determining alimony, is not a proper consideration in dividing marital property in a dissolution proceeding.
>
> *Id*. at 731, 386 N.W.2d at 858.
>
> We believe the view expressed in *Taylor* is a sound one, and conclude that, for goodwill to be marital property, it must be a business asset with value independent of the presence or reputation of a particular individual—an asset which may be sold,

transferred, conveyed or pledged. Thus, whether goodwill is marital property is a fact question and a party, to establish goodwill as marital property and divisible as such, must produce evidence establishing the salability or marketability of that goodwill as a business asset of a professional practice.

*Id.* at 205–06, 741 S.W.2d at 646–47 (alteration in original).

Peter argues that although *Wilson* involved goodwill associated with a professional practice, specifically an orthopedic-surgery practice, personal goodwill can also be found in other nonprofessional practices, such as the goodwill associated with Brave New Restaurant. However, even if this court were to assume that personal goodwill could be found in the valuation of the restaurant, we do not find that the circuit court clearly erred in finding that the goodwill was corporate goodwill under these particular facts based on Dobbs's testimony that he added the goodwill in his valuation of the restaurant if sold on the open market and that he also took into account the replacement of Peter in that valuation. Goodwill is characterized as corporate goodwill and marital property, subject to division, if the evidence establishes the salability or marketability of the goodwill as a business asset. *See Wilson*, *supra*. Thus, based on this court's standard of review, we affirm the circuit court's decision on this point.

Peter contends in his second point on appeal that the circuit court erred by "double dipping into the same stream of [his] future income" when it divided the goodwill of Brave New Restaurant in awarding Marie alimony. However, Peter is mistaken. This court's standard of review regarding an award of alimony is clear and is outlined as follows in *Kuchmas*:

An award of alimony is a question that addresses itself to the sound discretion of the trial court. *See McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000); *Burns v. Burns,* 312 Ark. 61, 847 S.W.2d 23 (1993). This court has held that the trial court can make an award of alimony that is reasonable under the circumstances. *See Mulling v. Mulling*, 323 Ark. 88, 912 S.W.2d 934 (1996) (citing *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988)).

The purpose of alimony is to rectify economic imbalances in earning power and standard of living in light of the particular facts in each case. *Mulling*, *supra*. The primary factors that a court should consider in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988); *see also Valetutti v. Valetutti*, 95 Ark. App. 83, 234 S.W.3d 338 (2006). The trial court should also consider the following secondary factors: (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of each of the parties; (4) the earning ability and capacity of both parties. *See Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998). The amount of alimony should not be reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty. *See Mitchell v. Mitchell*, 61 Ark. App. 88, 964 S.W.2d 411 (1998).

*Kuchmas v. Kuchmas*, 368 Ark. 43, 45–46, 243 S.W.3d 270, 271–72 (2006).

Peter's argument in his second point on appeal is flawed because it again is premised on the fact that the goodwill, which he alleges represents his future earning capacity, used in the valuation of the business was personal goodwill. *See Wilson*, *supra* (quoting *Taylor*, 386 N.W.2d 851). However, as explained in his first point on appeal, the circuit court did not err in finding that the goodwill in this case was corporate goodwill. Furthermore, at the hearing on the motion for reconsideration, the circuit court reduced the alimony to $4,000 per month and specifically stated that it did so after taking Peter's argument regarding "double dipping" into consideration. As such, we do not find that the circuit court abused its discretion and affirm the order of the circuit court.

Affirmed; motion to dismiss appeal denied; court of appeals' opinion vacated.
*James Law Firm*, by: *Lee D. Short*, for appellant.
*Lueken Law Firm*, by: *Patty W. Leuken*; and *James, House & Downing, P.A.*, by: *Matthew R. House*, for appellee.