

Cite as 2016 Ark. App. 75

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III

**No.** CV–15–305

| | | |
|---|---|---|
| GREGORY L. PELTS | | **Opinion Delivered** February 3, 2016 |
| | APPELLANTS | |
| V. | | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. 43DR–13–649] |
| SHELLY A. PELTS | | HONORABLE WILLIAM PRICE |
| | APPELLEE | FELAND, JUDGE |
| | | AFFIRMED IN PART; REMANDED FOR CLARIFICATION IN PART |

## CLIFF HOOFMAN, Judge

Appellant Gregory L. Pelts ("Gregory") appeals from a December 22, 2014 divorce decree filed by the Lonoke County Circuit Court in favor of appellee Shelly A. Pelts ("Shelly"). On appeal, Gregory first contends that the circuit court erred when it treated nonvested retirement benefits as property and thus capable of distribution in a divorce. Second, Gregory contends that the circuit court erred when it ordered him to elect and pay for survivor benefits for Shelly on his nonvested retirement plan. Alternatively, he contends that the circuit court erred when it failed to order Shelly to pay for survivor benefits for him on her vested retirement plan. We affirm in part and remand for further clarification in part.

Gregory and Shelly were married on August 4, 1990, and separated on or about July

SLIP OPINION

18, 2013.  Shelly filed a complaint for divorce on July 18, 2013.  Gregory subsequently filed a response and counterclaim for divorce.  After a hearing, the circuit court filed a temporary order on October 10, 2013, addressing issues of child custody, alimony, and property division, which were agreed on by the parties.  However, the parties disagreed as to the division of Gregory's retirement account, which is also the subject of this appeal.

A second hearing was held on May 8, 2014.  At that hearing, Shelly testified that she was requesting that she receive one-half of the marital portion of Gregory's military retirement benefits.  She explained that he had served in the military throughout most of their marriage.  According to Gregory's "Army National Guard Annual Statement," Gregory entered into the military in 1985, and he had twenty-six years of "creditable service."  If he was to retire at the date of the hearing, he would receive $3,734.51 per month after he turned age 60.  Shelly recognized the fact that he was currently serving active duty and that he would have twenty years of active-duty service if he served an additional four years.  After an additional four years, he would be forced to retire because he would have served a total of thirty years.  She denied, however, that there are two separate types of military retirement, reserve and active duty, because it is "called 'creditable service' . . . not called 'reserve service' or 'active service.'" Therefore, she testified that Gregory was already vested in his military retirement because he had twenty-six years of creditable service.

Gregory testified that he was currently serving in the Army National Guard.  He

SLIP OPINION

entered into the Army Reserve on June 10, 1985. He later transferred into ROTC and then went on active duty for three years. He further testified that he subsequently had a ten-month break in service but that he joined the Army National Guard in part-time reserve status for approximately eight or nine years. In 2001, he went back on active duty in the Army National Guard.

Gregory contended that there were two separate military retirement plans, active and reserve. He explained that he had twenty-six years of creditable service toward his reserve retirement. However, he intended to pursue his active-duty retirement, and he testified that he would not be allowed to draw from a reserve program if he did so. At the hearing, he testified that he did not have a problem with electing survivor benefits to allow Shelly to continue to draw benefits in the event of his death. After he obtained twenty years of active-duty service, which was in about four more years, he explained that he would receive benefits based on his highest three years of base pay instead of a point-based system as is used in the reserve-retirement plan. While he admitted that his service during the marriage may be relevant to his active retirement, he explained that he was not vested in the separate active-duty retirement plan until he served twenty years on active duty, which he had not done during the marriage.

Although he testified that he had four more years until he was able to withdraw active-duty retirement and that he planned on staying on active duty for another four years, he testified that a lot of things could happen that would stop him from completing the four

SLIP OPINION

years and that he was not yet vested in the active-duty retirement plan. He agreed that he was vested in his reserve-retirement plan, although he did not receive anything under that plan until he turned age sixty. That said, he admitted that some of his reserve time was included in the military's calculations when determining eligibility for active duty.

On June 9, 2014, Shelly filed a posttrial brief. In her brief, she argued that Gregory was vested in his military retirement, based on his combined service, and that she should not be divested of that marital asset. In Gregory's posttrial brief, filed on August 15, 2014, he admitted that he was vested in his reserve retirement, but he argued that he was not yet vested in his active-duty retirement. He alleged that the two retirements were separate and should not be grouped together. He explained that he would not be able to collect under his reserve retirement until he was age sixty, but if he decided to continue in his active-military duty for another four years, after which he would be vested in his active-duty retirement, he would be able to start collecting active-duty retirement as soon as he retired.

Despite his initial testimony to the contrary at the May 8, 2014 hearing, Gregory additionally argued in his posttrial brief that he should not be required to elect the survivor benefit plan when he retired because the expense was 6.5 percent of the retirement check per month for doing so. He maintained that if the circuit court mandated that he elect the survivor benefit plan, then Shelly should be required to pay for that benefit herself. In summary, he requested the circuit court to find that he pay Shelly $1,258.02 per month

SLIP OPINION

when he turned age sixty, which was based on the "May [Retirement Points Annual Statement] RPAS statement minus the points received prior to marriage and minus Defendant's share of Plaintiff's teacher retirement;" that no party should be required to elect a survivor benefit plan for the other party; and that no party should be required to provide a cost of living adjustment for the other party.

On December 1, 2014, a third hearing was held. At that hearing, Shelly's counsel indicated that although the decree had been drafted, Gregory's counsel had objected to the wording, and Gregory would not sign it. Both parties' counsel provided additional oral arguments regarding their positions, and the circuit court issued a letter ruling in favor of Shelly and directed Shelly's counsel to prepare a modified divorce decree. A divorce decree was filed on December 22, 2014, and it made the following findings regarding the division of the retirement benefits:

> 6. The issue of retirement benefits was a disputed issue which was decided by the Court as follows:
>
> a. The Plaintiff shall receive one-half of the marital portion of Defendant's military retirement, without reduction for disability compensation, and regardless of the form the benefits take, including but not limited to, whether the Defendant draws an active duty or reserve retirement, as the Court finds this is an asset of the marriage which cannot be divested. The Order Dividing Military Retirement shall be prepared at Plaintiff's expense. Plaintiff is entitled to a portion of Defendant's military retirement based upon the following formula: The numerator of the formula shall be the months the parties were married while Defendant was in the military service, or if applicable, the number of retirement points accumulated during the months the parties were married while Defendant was in the military service. The denominator shall be the total years the Defendant ultimately served in the military, or if applicable, the retirement points accumulated during the Defendant's military

SLIP OPINION

service. The numerator will be divided by the denominator and multiplied by one half to determine the amount of retirement to be paid to Plaintiff (months married / total months of service x ½ = Plaintiff's portion of retirement benefits);

   b. That in accordance with *Askins v. Askins*, 288 Ark. 333 (1986), and the facts herein, the Court finds that Plaintiff is entitled to the benefit of any enhancement to the retirement which may occur between the date of divorce and the Defendant's retirement. Therefore, should the Defendant draw his retirement benefits earlier than age sixty so shall the Plaintiff. The Plaintiff shall draw retirement benefits from the Defendant's military retirement whenever Defendant draws;

   c. Defendant shall elect and pay for survivor benefits for Plaintiff regarding his military retirement; and

   d. Defendant is awarded one-half of the marital portion of Plaintiff's teacher retirement which has accrued and vested for which a Qualified Domestic Relations Order shall issue and be prepared at Defendant's expense.

This timely appeal followed.

On appeal, this court reviews divorce cases de novo on the record. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). With respect to the division of property, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous, or against the preponderance of the evidence; the division of property itself is also reviewed under the same standard. *Brave v. Brave*, 2014 Ark. 175, 433 S.W.3d 227. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* We give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id.* As to issues of law, however, we give no deference to

SLIP OPINION

the trial court and rather review issues of law and statutory construction de novo. *Hargrove v. Hargrove*, 2015 Ark. App. 45, 453 S.W.3d 683.

Gregory first contends that the circuit court erred when it treated nonvested retirement benefits as property and thus capable of distribution in a divorce. In essence, Gregory admits that he is vested in his reserve-retirement plan, but he argues that he is not yet vested in his active-duty retirement plan. He argues that the two retirements are separate and should not be grouped together. Therefore, he argues that Shelly should only be allowed to receive one-half of her marital portion of the reserve retirement that he would have received at the date of divorce and that she should only be allowed to collect this retirement when he turns age sixty, regardless of whether he starts collecting higher retirement benefits in only four years under the active-duty retirement plan.

Shelly disagrees. She argues that "[w]hile the retirement benefits to which a service member may become entitled to is computed differently depending upon whether they serve in the non-regular or regular system, when they serve in both systems they still receive but one retirement. In other words, regardless of whether or not Appellant remains in the military long enough to draw 'active duty retirement,' he will receive but one retirement which is based upon his service in both the reserves and active duty." Therefore, she argues that Gregory is already vested in receiving his military retirement, regardless of the form, and that she is entitled to any future enhancement under our supreme court's holding in *Askins v. Askins*, 288 Ark. 333, 704 S.W.2d 632 (1986).

SLIP OPINION

We find Shelly's argument that there is only one military-retirement plan that encompasses varying benefits depending on the length and type of service convincing. This is supported by Gregory's testimony that he would be entitled to receive only one retirement check for his combined service, and even the relevant federal statutes use the term "retired pay," regardless of whether the statute references retirement benefits for reserve or active-duty service. *See* 10 U.S.C.A. § 12731 & 10 U.S.C.A. § 1401. Furthermore, Gregory has failed to provide any citation of authority that makes the distinction he now proposes.

In determining whether Shelly is entitled to Gregory's military-retirement benefits, our supreme court's decision in *Christopher v. Christopher*, 316 Ark. 215, 871 S.W.2d 398 (1994) is instructive. If a divorcing spouse has achieved an entitlement to military retirement pay, that entitlement is an asset which may be divided between the parties to the divorce. *Id.* If, however, the divorcing military spouse has not served for a time sufficient to have earned the right to receive military retirement pay, the right has not "vested" and there is no asset to be divided upon divorce. *Id.* It is undisputed that Gregory's right to military retirement pay is vested based on his reserve service.

Additionally, Shelly is entitled to any future enhancements. In *Askins*, our supreme court held that a spouse is entitled to any pre- and post-marital enhancement to military retirement pay. *Askins, supra.* There, the service member argued that the formula for dividing his military retirement should not have included any enhancements that occurred

prior to their marriage or any enhancements that occurred after the date of divorce but before his actual retirement. Our supreme court disagreed and held the following:

> The task of the court is to ascertain the value of the prospective military pension as an asset of marital property. Section 34-1214 requires that it be divided with fifty percent to each party unless other considerations stated in the statute make other than equal division more equitable.
>
> If Colonel Askins retired tomorrow or had retired on the day of his divorce, as he is and was eligible to do, under the chancellor's formula Mrs. Askins would have been limited to a percentage of his base retirement pay determined as of that date. That is and was in Colonel Askins's power to determine. If he had retired the day of the divorce and then gone to work for a company with a new retirement program, Mrs. Askins would not have been entitled to participate in the new retirement benefits. However, she is entitled to a percentage of whatever his military pension may be because that is the asset to which she contributed.
>
> We are in no position to say, especially given the record before us, that Mrs. Askins's contribution to the pension was any less because she was married to Colonel Askins in the middle of his career than it would have been had she been married to him for, say, the last twelve years of it. The enhancement of the ultimate retirement pay may be most dramatic at the end, but the record before us contains no evidence of that, and none whatever of military pay scales. Even if such evidence were in the record, we could not say with assurance that Mrs. Askins's entitlement, based on her contributions to the marriage, should be less than, as in the example above, 12/28 of the pay expected. While no cases we have found, other than the one containing the dissenting opinion cited above, have gone into this "enhancement" discussion, many have approved a formula like that used by the chancellor in this case.

*Askins v. Askins*, 288 Ark. 333, 336–37, 704 S.W.2d 632, 634 (1986). Applying the principles set forth by our supreme court to the present case, we conclude that the circuit court committed no error in awarding Shelly one-half of her marital portion of Gregory's military retirement effective when Gregory retires and begins drawing benefits. Under the particular circumstances of this case, we think this case is akin to *Askins*, *supra*, in that the trial court permitted Shelly to share in the post-divorce enhancement of the retirement pay,

9

SLIP OPINION

commensurate with the fraction of the years of marriage compared to Gregory's total years of military service. We hold that such a division did not run afoul of our marital-property law and was not clearly erroneous.

Gregory contends in his second point on appeal that the circuit court erred when it ordered him to elect and pay for survivor benefits for Shelly on his nonvested retirement plan. Gregory additionally argues that he should not have been required to pay the entire premium for the survivor benefits and that the circuit court erred in ordering him to do so without any additional findings justifying the unequitable distribution. Shelly disagrees.

Shelly argues that the circuit court's order does not require Gregory to pay the entire survivor benefit premium. Instead, she explains the premium "comes 'off the top' of the retirement before the division, with the effect that both parties . . . [pay] their share of the [survivor benefit plan] costs." In his reply brief, Gregory states that if this court finds that the circuit court did not err in awarding survivor benefits, then he does not object to the survivor benefits if the cost is shared by the parties as Shelly suggests in her brief. However, he suggests that the circuit court's order needs to be modified to clarify that "'both parties end up paying their share of the [survivor benefits plan] costs' instead of the current language that states that the 'Defendant shall elect and pay. . . .'"

As we found above in our discussion of the first point on appeal, the circuit court did not err in dividing Gregory's military retirement, including any future enhancements. Additionally, we do not find that the circuit court erred in requiring Gregory to elect a

survivor benefit plan in its marital-property division. In Arkansas, military retirement benefits are marital property. *Surratt v. Surratt*, 85 Ark. App. 267, 148 S.W.3d 761 (2004). In *Dove v. Dove*, 2009 Ark. App. 682, this court found that a circuit court did not clearly err when it ordered the parties to divide the monthly premium for the survivor's benefit. Although the circuit court's order appears to order Gregory to bear the payment of the premium in its entirety, appellee suggests, without objection from appellant, that she would bear a proportional payment because of the manner in which the government issues the retirement check. Based on this confusion on appeal and Gregory's concession that he would bear a proportional share of the obligation, as appellee indicated was her existing understanding of the order, we remand this issue to the circuit court for further clarification and modification of the divorce decree consistent with this opinion.

Finally, Gregory briefly argues that the trial court erred in not ordering Shelly to also pay for survivor benefits for him on her vested retirement plan. However, this issue was not sufficiently developed below to determine if such an election was even available under Shelly's retirement. Furthermore, the circuit court's order does not contain a specific ruling on this issue. Therefore, on this undeveloped record, we decline to address this issue. *See Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007); *Parker v. Parker*, 97 Ark. App. 298, 248 S.W.3d 523 (2007).

Affirmed in part; remanded for clarification in part.

GRUBER, GLOVER, VAUGHT, and BROWN, JJ., agree.

11

SLIP OPINION

Hixson, J., dissents in part and concurs in part.

**KENNETH S. HIXSON, Judge, dissenting in part and concurring in part.**

Where military retirement benefits vest after twenty years of service, it is arguably unfair for the spouse of a military member to be denied retirement benefits when the parties divorce after nineteen years of marriage and the military member continues to serve, becomes vested, and subsequently receives retirement benefits; yet, it is clearly the law. Similarly, in a nonmilitary setting, where a retirement plan vests after twenty years of employment, it is arguably equally unfair for the spouse of the retirement-plan member to be denied retirement benefits when the parties divorce after nineteen years of marriage and the plan member continues his or her employment, becomes vested, and subsequently receives retirement benefits; yet, it is clearly the law. Here, the trial court and majority have constructed a legal fiction to create an exception to the generally accepted "vesting" rules for military retirement plans so that the military spouse may receive retirement benefits from a retirement plan that does not vest for another four years. In my opinion, any exceptions to the current vesting rules for military retirement plans that were created through binding precedent by our supreme court should be pronounced by either our supreme court or the Department of Defense, but not by our court. We should not create legal fictions in an attempt to atone for perceived unfairness in divisions of military-retirement plans.

In this case, the evidence is largely undisputed. Lt. Col. Pelts has served both as a reservist and in the active armed forces. There are two possible retirement plans available

12

to Lt. Col. Pelts.   One plan is referred to herein as the "reservist" plan; and, the other plan is referred to herein as the active armed-forces plan or the "active" plan.   Each plan has its own distinctive qualifications and benefits.   The plans have common elements, but they are mutually exclusive. One cannot receive benefits from both the active plan and the reservist plan.[1]

Lt. Col. Pelts described the Department of Defense retirement plans as follows in his brief:

> Emphasizing the different plans, the Congressional Research Service explained: 'There are currently three separate but related retirement systems within the [Department of Defense]: one for active duty members, one for reservists, and one for those who become medically disabled and are unable to complete a 20-year military career due to their disability.' Kristy N. Kamarck, *Military Retirement: Background and Recent Development*, 2 (April 30, 2015)[.]

Separate statutory schemes govern each retirement system.   The "reservist" plan promulgated by the U.S. Congress is codified at 10 U.S.C. §§ 12731−12741, and under this plan, benefits cannot commence until the service member reaches the age of sixty. The "active" plan promulgated by the U.S. Congress is codified at 10 U.S.C. §§ 1401−1414, and these benefits become payable immediately upon retirement so long as the service member has reached at least twenty years of active duty.

---

[1] 10 U.S.C. § 12731(a)(4) provides, in pertinent part, that individuals are prohibited from receiving reservist retirement benefits if they are entitled to receive retirement from any of the armed forces, i.e., active-plan benefits.

It is clear from the evidence that Lt. Col. Pelts is currently vested in the reservist plan; therefore, the reservist plan is marital property. It is equally clear that because Lt. Col. Pelts has only sixteen years of active duty, he is not vested in the active plan, and he cannot become vested unless, and until, he serves another four years as defined by the active plan; therefore, the active plan is not marital property. The evidence also showed that the future monthly payments from the active plan are greater than the future monthly payments from the reserve plan. And, while the payments from the active plan commence immediately upon retirement, the payments from the reserve plan do not commence until the military member obtains the age of sixty years. Clearly, the active plan is better than the reservist plan. It pays more; and, it pays sooner. Not only is the active plan better, the evidence was also clear that Lt. Col. Pelts *plans* on serving at least four more years in active service so that he can vest in the active plan and receive the more attractive active-plan benefits.

Our law is settled that only *vested* retirement accounts are considered marital property and subject to division in the event of a divorce. *Christopher v. Christopher*, 316 Ark. 215, 871 S.W.2d 398 (1994). How, then, can the majority hold that the monthly payments from the nonvested active plan are marital property and subject to division as marital property in a divorce? There appears to be an impassable roadblock. The only way to circumvent the roadblock and to conclude that the nonvested retirement benefits are marital property is to judicially create a fiction. That, I cannot do.

The trial court, and our majority, have created an exception by legal fiction to the "vesting" rule. The trial court stated, "The [appellee] shall receive one-half of the marital portion of the [appellant's] military retirement, . . . and *regardless of the form the benefits take, including but not limited to, whether the [appellant] draws an active duty or reserve retirement*, as this court finds this is an asset of the marriage which cannot be divested."  (Emphasis added.) The trial court and our majority have concluded that somehow the reservist plan and the active plan are actually one generic cumulative "Military Retirement Plan," and because Lt. Col. Pelts is vested in one aspect of the plan (the reservist plan), he is vested in the generic cumulative combined plan.  I would attempt to define this new exception as, "If one spouse participates in two retirement plans that have some common elements (one vested and one nonvested), one should really consider those plans as only one combined plan, and that we should merge the benefits of those plans depending on future events and, further, we should deem that the new 'merged' plan is vested despite the fact that part of the new merged plan by its very terms cannot vest for another four years."  Confusing? Apparently not.

By way of analogy, assume an employee of Acme Company is in middle management and is eligible for the mid-level-management retirement plan after ten years of employment. There is also an upper-management retirement plan that has better benefits and vests after twenty years of employment, and the time accrued for the mid-level-management plan also accrues toward the vesting period for the upper-management plan.  Further assume that

15

SLIP OPINION

the employee is promoted to upper management and is then divorced after fifteen years of employment. Clearly, because the employee has been employed for ten years, the employee is vested in the mid-management plan, and those plan benefits are marital property subject to division in the divorce. It is equally clear that, although the employee is currently employed in upper management, because the employee has not been employed for twenty years, he is not yet vested in the upper-management plan and those benefits would not be considered marital property. Is there any legal rationale to somehow find that the employee is vested in the more attractive upper-management plan? That answer is simple and it is "no"; he has not been employed for twenty years. However, if one would apply the majority's logic, the answer becomes "yes." Because both plans emanate from the Acme Company, because both plans have common elements, and because time served for the mid-level plan also accrues for the upper-management plan, then, despite the fact the employee has not been employed for the required twenty years, the employee would be deemed currently vested in the newly named "Acme Company Combined Retirement Plan" and entitled to the more attractive upper-management benefits; therefore, it would be marital property. I cannot take such a leap.

As set forth above, the reservist plan emanates from 10 U.S.C. §§ 12731 et seq. The active plan emanates from 10 U.S.C. §§ 1401 et seq. The plans pay different amounts; the plans pay at different times. They are not the same plan. This is not a generic cumulative "Military Retirement Plan." If the United States Congress or the Department of Defense

want to merge the plans, they certainly have the authority to do so. But, in my opinion, we do not have such authority.

Lt. Col. Pelts is vested in the reservist plan. Those benefits are clearly marital property subject to division in the divorce. The reservist plan currently pays $3734 in monthly benefits,[2] and those benefits do not commence for another fourteen years when Lt. Col. Pelts turns sixty years of age in 2028. Mrs. Pelts is entitled to one-half of the marital portion of those benefits. Therefore, in my view, Mrs. Pelts should be entitled to begin receiving her share of the monthly reservist benefits from Lt. Col. Pelts in 2028 when Lt. Col. Pelts reaches sixty years of age. There is nothing confusing or complicated about that division of the marital property.

Lt. Col. Pelts is not currently vested in the active plan. Lt. Col. Pelts cannot vest in the active plan unless, and until, he serves in the active armed forces for another four years. If Lt. Col. Pelts were vested, the active plan would currently pay $4300 in monthly benefits and those benefits would commence immediately upon retirement. Again, clearly a better plan for the members of the active armed services as opposed to members of the reserves.

---

[2] One would presume that the reservist-plan monthly benefit will increase between now and 2028 when the payment would commence. Mrs. Pelts would be entitled to her portion of that increase in value as an enhancement.

SLIP OPINION

Not only does the majority award benefits in a nonvested plan, the majority's definition of "vesting" is based on events that may, or may not, happen in four years. While Lt. Col. Pelts certainly *plans* on serving in the active armed forces another four years, *his future plans* are not sufficient to create vesting. This begs the question: If Lt. Col. Pelts does not continue to serve active duty in years 17, 18, 19 or 20, will Mrs. Pelts still receive her portion of the more attractive active-retirement benefits as marital property?[3] According to the majority opinion, apparently the answer is "yes" because Lt. Col. Pelts is vested in the generic combined "Military Retirement Plan," and that plan is marital property. Because the majority opinion is based entirely upon what may, or may not, happen in four years, in my view, the majority opinion is effectively an advisory opinion, the likes of which, heretofore, this court has been reluctant to issue.

I would reverse the trial court and find that the reservist plan is marital property subject to division according to the terms of that plan; and, that the active plan is not marital property because it has not vested and is not subject to division. The trial court should order Lt. Col. Pelts to begin making payments to Mrs. Pelts when he turns sixty years of

---

[3] Similar arguments attempting to circumvent vesting rules in military retirement plans have been repeatedly made to this court and the supreme court. The following language has been cited on several occasions: "We agree with the chancellor. The proof is that Durham will not be entitled to a pension until he has served for at least 20 years. Until then, unlike the professor in *Day v. Day*, 281 Ark. 261, 663 S.W.2d 719 (1984), Major Durham has no vested right that must be recognized as marital property. He is employed by the United States; so Congress could at any time change his retirement plan or abolish it." *Durham v. Durham*, 289 Ark. 3, 5, 708 S.W.2d 618, 619 (1986).

age in 2028 in an amount equal to Mrs. Pelts's share of the monthly reservist retirement benefit.[4] That is an ascertainable and calculable amount. That is the amount which is marital property. If this holding would cause an inequitable result, then the trial court would have the authority and opportunity, upon remand if so requested, to fashion whatever remedy it saw fit to address any such inequality.[5]

Because I disagree with the majority's holding that Mrs. Pelts is entitled to share in the active-plan retirement benefits should Lt. Col. Pelts ever become eligible for those presently nonvested benefits, I likewise disagree with the majority's holding that Lt. Col. Pelts is required to elect survivor benefits for the active plan. However, I would hold that, in the event Lt. Col. Pelts elects the presently vested reservist-retirement plan, he should be required to elect survivor benefits for that plan if that plan so permits. I concur with the majority's decision to the extent it declined to address the undeveloped issue regarding survivor benefits for Mrs. Pelts's retirement plan.

For these reasons, I dissent in part and concur in part.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Scholl Law Firm, P.L.L.C.*, by: *Scott A. Scholl*, for appellee.

---

[4] See footnote 1.

[5] However, the trial court could not award alimony or an unequal division of property based on the amount of benefits in the active plan because the active plan is not marital property. *See Holaway v. Holaway*, 70 Ark. App. 240, 16 S.W.3d 302 (2000).