

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV–17–51

| | |
|---|---|
| HAROLD R. DACE | Opinion Delivered: October 18, 2017 |
| APPELLANT | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. 73DR–11–564] |
| V. | |
| DEBRA (DACE) DOSS | HONORABLE CRAIG HANNAH, |
| APPELLEE | JUDGE |
| | AFFIRMED |

**DAVID M. GLOVER, Judge**

Harold R. Dace appeals the White County Circuit Court's denial of his request to terminate his alimony obligation to appellee Debra (Dace) Doss. Specifically, he contends (1) the circuit court erred in not terminating Doss's alimony upon her remarriage; (2) it also erred in requesting and considering evidence outside the record to determine Doss's monthly expenses; and (3) Act 1487 of 2013 calls into question the validity of permanent alimony awards. We affirm.

Dace and Doss divorced in 2012 after a seventeen-year marriage. The circuit court awarded Doss alimony, with the divorce decree stating, "Based on [Dace's] income of $4,000.00 per month and [Doss's] income of $800.00 per month, [Dace] shall pay [Doss] alimony in the amount of $619.00 per month for the remainder of [Doss's] life." Doss remarried on November 7, 2015; after her remarriage, Dace unilaterally terminated his alimony payments to her.

In April 2016, Doss filed a motion for contempt against Dace, asking the circuit court to hold him in contempt for terminating her alimony payments in violation of the terms of the divorce decree. In response, Dace filed a motion to terminate his alimony obligation due to Doss's remarriage and because she no longer had a need for alimony. After a hearing on the matter, the circuit court found (1) Doss had the ability to earn at least minimum wage and imputed a monthly income of $1,075 to her; (2) Doss had reasonable monthly expenses of $1,309; (3) Doss had remarried and her current husband now provided housing and paid some of her other monthly expenses; and (4) Doss had a current need of $234. The circuit court reduced Doss's alimony from $619 per month to $234 per month as of May 31, 2016 (the date Dace filed his motion to terminate alimony); ordered Dace to pay Doss a total of $5,269 in back alimony; and found Dace had an ongoing duty to pay alimony in the amount of $234 per month. Dace timely appealed the circuit court's ruling.[1]

### Standard of Review

Appeals of domestic-relations proceedings are reviewed de novo. *Nelson v. Nelson*, 2016 Ark. App. 416, 501 S.W.3d 875. The decision to grant alimony lies within the sound discretion of the circuit court and will not be reversed on appeal absent an abuse of discretion. *Beck v. Beck*, 2017 Ark. App. 311, 521 S.W.3d 543. An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Bennett v. Bennett*, 2016 Ark. App. 308, 496 S.W.3d 409. This court has recognized that a circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Beck*, *supra*. It is not our duty under our standard of

---

[1]Doss has not appealed the reduction in the amount of her alimony.

review to simply substitute our judgment for that of the circuit court, which was in a far better position to judge the credibility of the witnesses. *Berry v. Berry*, 2017 Ark. App. 145, 515 S.W.3d 164.

The purpose of alimony is to rectify economic imbalances in earning power and standard of living in light of the particular facts of each case; the circuit court may make an award of alimony that is reasonable under the circumstances. *Brave v. Brave*, 2014 Ark. 175, 433 S.W.3d 227. The primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay; secondary factors are the financial circumstances of both parties, the amount and nature of both current and anticipated income of both parties, the extent and nature of the resources and assets of each party, and the earning ability and capacity of both parties. *Id.* The amount of alimony should not be reduced to a mathematical formula, as the need for flexibility outweighs the need for relative certainty. *Id.*

Court-ordered alimony is always subject to modification. *Nelson, supra.* Modification of an alimony award must be based on a significant and material change in the circumstances of the parties, and the burden of showing such a change in circumstances is on the party seeking the modification. *Berry, supra.*

## I. Continuation of Alimony

Dace first argues the circuit court erred in not terminating his alimony obligation to Doss. Specifically, he argues Doss no longer has a need for alimony after her remarriage in November 2015; the alimony award should have automatically terminated on her remarriage pursuant to Arkansas Code Annotated section 9–12–312(a)(2)(A); and the circuit

court's use of a mathematical formula in determining a modified amount of alimony was contrary to our supreme court's holding in *Brave*, *supra*, that an alimony award should not be reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty. We cannot agree with Dace's contentions.

Arkansas Code Annotated section 9–12–312(a)(2)(A) (Repl. 2015) provides, "Unless otherwise ordered by the court or agreed to by the parties, the liability for alimony shall automatically cease upon . . . the date of the remarriage of the person who was awarded the alimony." Dace acknowledges in his brief that the statutory provision states that alimony automatically terminates when certain events occur "unless otherwise ordered by the court," but he contends that while the circuit court originally ordered alimony to be paid for the remainder of Doss's life, the new order, entered in October 2016, does not "order otherwise," merely stating that Dace "shall have an ongoing duty to pay alimony in the amount of $234.00 per month."

Arkansas Code Annotated section 9–12–312(a)(2)(A) does not require the circuit court to terminate Dace's alimony obligation to Doss. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language; when the language of a statute is plain and unambiguous, there is no need to resort to the rules of statutory construction. *Artman v. Hoy*, 370 Ark. 131, 257 S.W.3d 864 (2007). Dace was originally ordered to pay Doss alimony for the remainder of her life; Doss was forced to file a motion for contempt against Dace when he unilaterally stopped paying alimony after she remarried. The hearing regarding alimony was held well after Doss had remarried, yet the circuit court, fully aware

of Doss's remarriage, found Dace "shall have an ongoing duty to pay alimony," although it was reduced from $619 per month to $234 per month. Therefore, the circuit court clearly ordered otherwise, finding Dace's alimony obligation should continue, even in light of Doss's remarriage.

Dace further contends his alimony obligation should have terminated at the time of Doss's remarriage because she no longer had a need for alimony after that date. Specifically, he argues that once Doss remarried, she no longer had to pay rent or utilities, and those savings alone exceeded the $619 she was receiving in alimony prior to her remarriage.

Dace testified at the hearing that he stopped paying Doss alimony without a court order and without consulting Doss about her continued monthly needs after she remarried. He reported that his income had not changed significantly since the divorce; he had received a $1 per-hour raise at his job.

Doss testified that she remarried in November 2015 and moved to Fayetteville, where her new husband was living. She stated she is a hairdresser and had worked at a salon in Vilonia for twenty years; after her remarriage, she continued to commute to Vilonia for two or three days every other week. She said she was now making less money because she was working fewer days and had lost some clients when she moved to Fayetteville; she explained that she did not cut hair in Fayetteville because she could not afford the booth rental and because, at fifty-four, starting a new business with no clientele would be difficult because people do not want to go to the "old girl." She said she continued to commute to Vilonia because she had a client base, and that was the only money she was making; she had applied for entry into a program for medical-assistant and surgery-tech jobs, but she was not

accepted; she also had worked some temporary minimum-wage jobs, but it cost her more in gas than she made; and stores wanted younger people.

Doss agreed her new husband paid the rent and utilities, and she no longer had those expenses. However, she testified she still had monthly expenses for which she was responsible—her car payment ($369), her car insurance ($110), her cell-phone bill ($130), her gasoline ($400), booth rental at the salon ($250), groceries ($400), "products" ($200), clothes ($100), her credit-card bill, and other expenses, such as occasionally eating out. Doss testified not receiving her alimony had required her to use her credit card, borrow money, and take money out of her IRA. She testified her new husband made less than Dace.

Doss's new husband, West Doss, testified he paid the rent and utilities, but Doss helped with household expenses. He also stated he helped his adult children with college and some other expenses. He reiterated Doss had tried to get a job as a hairdresser in Fayetteville, but booth rental was expensive, and she did not have a clientele. He said alimony was necessary for Doss because she was falling short every month in covering her bills.

Dace's counsel argued Doss was now getting more than $619 in benefits from her new husband with rent and utilities. The circuit court noted that just because Doss had reduced her expenses did not mean she did not still have a need for alimony; however, the circuit court also acknowledged Dace would be entitled to a reduction and some income might need to be imputed to Doss, as she had voluntarily reduced her hours by moving to Fayetteville.

We hold the circuit court did not abuse its discretion in finding Doss still had a need for alimony in the amount of $234 per month. Clearly, the circuit court took into consideration the fact that Doss's remarriage allowed her not to incur certain expenses, i.e., rent and utilities, and reduced Dace's alimony obligation from $619 per month to $234 per month. However, as expressed by the circuit court at the hearing, the reduction of expenses did not automatically translate into a finding that Doss had no need for continuation of alimony in some amount. Doss was still falling short of her monthly expenses, and Dace had the ability to pay the reduced amount of alimony. *See Valetutti v. Valetutti*, 95 Ark. App. 83, 234 S.W.3d 338 (2006).

Dace also argues the circuit court used a mathematical formula to determine the modified alimony award, in violation of the well-settled rule in Arkansas that alimony should not be reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty. Dace argues the circuit court erroneously used a mathematical formula by determining what it considered to be Doss's reasonable expenses ($1309) and subtracting from it the $1075 imputed income to arrive at the reduced amount of $234 for alimony.

We again cannot agree with Dace's argument. Alimony requires each case to be considered on its own facts and merits. The main factors are one spouse's need and the other spouse's ability to pay; there are secondary factors to consider as well. No "cookie-cutter" mathematical equation can be universally applied to all cases of alimony; each one brings its unique facts and circumstances. This rule does not prohibit circuit courts from considering each party's financial needs and earning capacity in arriving at a numerical calculation of

disparity in income; arriving at an amount of alimony will always require an analysis of numbers and some type of addition and subtraction. In the instant case, the circuit court clearly took into consideration what it believed Doss was capable of earning, how her expenses had been reduced, what expenses remained, and Dace's ability to continue to pay some amount of alimony. No precise mathematical formula was wholesale applied to this decision.

## II.  Consideration of Matters Outside the Record

Dace also argues the circuit court erred by requesting and considering evidence outside the record. This issue is not preserved for appellate review.

At the hearing, the circuit court questioned Doss about her tax returns, stating the numbers made no sense. Doss's counsel asked for leave to bring the tax preparer to explain the numbers. However, at the close of the hearing, the circuit court told Doss's counsel to complete an affidavit of itemized current expenses and share it with opposing counsel. The circuit court also told Doss's counsel to let it know if the tax preparer's deposition would be taken or if another hearing needed to be set. Dace's counsel made no objection to any of these discussions. Doss's counsel supplied the circuit court with the requested information; there is no indication Dace's counsel did not receive the same information. Furthermore, even though Dace filed a post-trial motion, he did not object in that motion to the circuit court's use of that information in arriving at its calculation of modified alimony. Dace raises this issue for the first time on appeal. It is well settled that this court will not consider arguments raised for the first time on appeal. *Doughty v. Douglas*, 2017 Ark. App. 445, ___ S.W.3d ___.

*III. Act 1487 of 2013*

Finally, Dace argues that the modification of Arkansas Code Annotated section 9-12-312(b) by Act 1487 of 2013[2] calls into question the validity of permanent alimony awards. He is incorrect.

Act 1487 of 2013 amended subsection (b) of section 9-12-312, providing for rehabilitative alimony. Dace argues that subsection (b)(1) of the statute now specifically allows awards of rehabilitative alimony only. However, in *Foster v. Foster*, 2016 Ark. 456, 506 S.W.3d 808, a case concerning a 2014 divorce decree awarding rehabilitative alimony, our supreme court held that an award of permanent alimony is authorized under Arkansas Code Annotated section 9-12-312(a), and held that the factors to be considered for permanent alimony are also factors to be considered for awards of rehabilitative alimony. Furthermore, in *Mason v. Mason*, 2017 Ark. 225, 522 S.W.3d 123, our supreme court held that Act 1487 did not automatically terminate alimony awards entered before August 16, 2013; Dace and Doss were divorced before that date.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Harrelson Law Firm, P.A.*, by: *Steve Harrelson*, for appellant.

*Simpson & Simpson*, by: *James A. Simpson, Jr.*, and *Haley Smith*, for appellee.

---

[2]Act of April 22, 2013, No. 1487, 2013 Ark. Acts. 6597.