Bruce KUCHMAS *v.* Deborah KUCHMAS

06-92                                                  243 S.W.3d 270

Supreme Court of Arkansas
Opinion delivered November 16, 2006

44

*Verkamp & Ladd, P.A.*, by: *Dianna Hewitt Ladd*, for appellant.

*Eddie N. Christian*, for appellee.

TOM GLAZE, Justice. In this case, appellant Bruce Kuchmas asks our court to reverse an award of alimony entered by the Domestic Relations Division of the Sebastian County Circuit Court. We find no error and affirm.

Bruce Kuchmas filed a complaint for divorce from his wife, appellee Deborah Kuchmas, on January 18, 2005. Deborah answered and counterclaimed for divorce; in her counterclaim, she sought custody of the couple's daughter, Sloane. After a hearing on August 23, 2005, the trial court granted Bruce a divorce from Deborah and dismissed Deborah's counterclaim for divorce. The court awarded custody of Sloane to Deborah and ordered Bruce to pay $127 per week in child support. The court further ordered the parties to sell their marital home, awarding them title to the property as tenants in common, and directed them to evenly divide the proceeds from the sale of the house. Until the house was sold, the court ordered that Bruce and Deborah were to be responsible for one-half of the mortgage payment, taxes, and insurance. The court awarded each party certain personal property and ordered that each would be responsible for certain debts. Finally, the court ordered Bruce to pay Deborah alimony in the amount of $100 per month. From the court's order, entered on October 7, 2005, Bruce filed a timely notice of appeal on November 4, 2005, and now raises three arguments, all pertaining to the trial court's decision to award Deborah alimony.

An award of alimony is a question that addresses itself to the sound discretion of the trial court. *See McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000); *Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993). This court has held that the trial court can make an award of alimony that is reasonable under the circumstances. *See Mulling v. Mulling*, 323 Ark. 88, 912 S.W.2d 934 (1996) (citing *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988)).

The purpose of alimony is to rectify economic imbalances in earning power and standard of living in light of the particular facts in each case. *Mulling, supra*. The primary factors that a court should consider in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988); *see also Valetutti v. Valetutti*, 95 Ark. App. 83, 234 S.W.3d 338 (2006). The trial court should also consider the following secondary factors: (1) the financial circumstances of both parties; (2) the amount and nature

of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of each of the parties; and (4) the earning ability and capacity of both parties. *See Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998). The amount of alimony should not be reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty. *See Mitchell v. Mitchell*, 61 Ark. App. 88, 964 S.W.2d 411 (1998).

In his first point on appeal, Bruce asserts that he does not have the ability to pay alimony, and therefore, the award of alimony was an abuse of discretion. At the hearing on the parties' divorce petition, Bruce testified that he worked for Jarden Plastics Solutions, earning $17.75 per hour. He also stated that he paid monthly bills in the following amounts: $100 a month on each of two Visa credit cards; $25-$30 a month on a Best Buy credit card; about $20 a month on a bill to the Cooper Clinic; $69 "and some change" on a loan Bruce had taken out against his 401(k) plan; approximately $345 for his half of the mortgage payment; and cell phone bills for himself and the couple's daughter. In sum, Bruce estimated that his "approximate outgoing" was "around $2300 a month." One of the exhibits introduced during the hearing was Bruce's last pay stub, which reflected his hourly earnings of $17.75; a note attached to that exhibit contained calculations that estimated Bruce's average net weekly income to be $721.46. Bruce agreed at trial that this figure represented his average weekly take-home pay, and this was the amount on which the trial court based the child support award of $127 per week. *See* Ark. Sup. Ct. Admin. Order No. 10.

Given the figure of $721.46 as Bruce's weekly income, his monthly income can be calculated at $3126.33. (Multiplying $721.46 by 52 weeks in a year equals $37515.92; dividing this amount by twelve months in the year equals $3126.33.) As Bruce testified that his monthly monetary outflow was "around $2300 a month," it is clear that the trial court did not abuse its discretion in determining that Bruce could afford $100 a month in alimony.

Bruce raises an additional argument that the $2300 in monthly expenses does not include the $127 per week in child support. However, given Bruce's $3126.33 monthly salary and deducting his estimated $2300 in monthly expenses, Bruce is left with $826.33 per month. The court-ordered child-support pay-

ments total $550.33 each month.[1] Subtracting that amount from $826.33 leaves Bruce with $275 out of which he can pay alimony.

We further note that the Kuchmas's daughter, Sloane, was born on February 16, 1988; Sloane thus turned eighteen years old in February 2006. Ordinarily, the legal obligation of a parent to support a child ceases upon the child's reaching majority, which, in Arkansas, occurs when the child reaches the age of eighteen. *See Van Camp v. Van Camp*, 333 Ark. 320, 969 S.W.2d 184 (1998) (citing *Towery v. Towery*, 285 Ark. 113, 685 S.W.2d 155 (1985)). Moreover, under Ark. Code Ann. § 9-14-237 (Repl. 2002), "[a]n obligor's duty to pay child support for a child shall automatically terminate by operation of law when the child reaches eighteen years of age or should have graduated from high school, whichever is later." *See also Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005). Under this statute, Bruce is only obligated to pay child support until Sloane graduates from high school.[2] Once that child-support obligation ceases, he will have in excess of $500 remaining from his monthly income out of which to pay alimony to Deborah.

In his second point on appeal, Bruce argues that the award of alimony was an abuse of discretion "because the trial court improperly considered the child's future college expenses as an ongoing expense of [Deborah's]." Noting the general principle, cited above, that a parent's obligation to support a child ends when the child reaches the age of majority, Bruce argues that the trial court found, over his objection, "that expenses relating to the child's future college was relevant to alimony because 'it's obviously an ongoing expense.'" Therefore, he claims, the trial court erred in considering Sloane's future college expenses as an ongoing expense for Deborah for which Bruce would have to pay.

However, neither the record nor the order that was entered reflect that the trial court actually considered Sloane's future college expenses as a factor in awarding Deborah alimony. During the trial, the following colloquy occurred:

---

[1] $127 per week x 52 weeks = $6604 ÷ 12 months = $550.33.

[2] The record is silent as to when Sloane will graduate from high school, but as she reached the age of eighteen in February of 2006, she may well have graduated by the time of this writing.

COUNSEL: Is [Sloane] going to be eligible for scholarships or any sort of assistance when it comes time to going [*sic*] to college?

DEBORAH: I hope so. Her grades are good. I hope that she does get some scholarships.

COUNSEL: Do you intend to see that she gets to go to college?

DEBORAH: Yes.

COUNSEL: And of course that can be expensive?

DEBORAH: Yes.

COUNSEL: Okay. Has your husband offered to do anything with regard to that?

BRUCE'S COUNSEL: Your Honor, objection. It's irrelevant as to college.

COURT: Child support does not extend beyond eighteen, but that's obviously an ongoing expense.

COUNSEL: Talking about her needs and what she's going to need to do, has [Bruce] — have you had any discussions with him about college?

DEBORAH: No.

In the court's written order, there is no mention of Sloane's future college expenses; rather, the order simply states that Bruce "is hereby ordered to pay alimony to [Deborah] in the amount of one hundred dollars ($100.00) per month." Other than the comment made by the trial court during the above-described colloquy, there is simply no evidence that the court took Sloane's college expenses into account in rendering its decision. In the absence of any indication that the court considered this a factor, it cannot be said that the trial court abused its discretion in making the comment that it did.

Bruce's final argument on appeal is that, even if he had the ability to pay alimony, consideration of the secondary factors would also warrant reversal of the alimony award. As noted above,

the primary factors to be considered in awarding alimony are the need of one spouse and the other spouse's ability to pay; secondary factors that may also be considered in setting alimony include the following: (1) the financial circumstances of both parties, (2) the amount and nature of the income, and (3) the extent and nature of the resources and assets of each of the parties. *Powell v. Powell*, 82 Ark. App. 17, 110 S.W.3d 290 (2003); *see also Boyles v. Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980) (listing numerous factors for the trial court to consider in setting alimony).

Bruce maintains that an analysis of these secondary factors demonstrates that the trial court abused its discretion in setting alimony at $100 per month. First, he argues, Deborah failed to provide evidence of her need; he claims that Deborah had worked throughout their marriage, and continued to work at the time of their divorce, and that she had no health problems that would prevent her from working in the future. However, Deborah testified that, although she was working, her take-home income was about $500 every two weeks. In addition, she testified that she had no special skills or training, and that she worked at the bank in Mansfield, where she had lived most of her life.

Nonetheless, Bruce maintains that Deborah unreasonably increased her own monthly expenses by moving out of the marital home and into a friend's house, thereby increasing her monthly rent payments by $300. Bruce argues that Deborah could have waited until the couple's house sold before moving out. However, Deborah stated that she could not afford to pay the utilities on the house, and that the couple's daughter, Sloane, had "been wanting to move out of that house," so Deborah moved "more than anything . . . for her, . . . to get out of there." That Bruce feels that Deborah's reasons for moving are unreasonable does not mean that the trial court abused its discretion in awarding her alimony.

Next, Bruce argues that Deborah had a substantial interest in jointly held property, including one-half of Bruce's 401(k) plan, the balance of which at the time of the divorce was approximately $45,000. In addition, Bruce notes that, once the marital house sells, Deborah will receive half of the proceeds from that sale. With roughly $15,000 in equity in the home, Bruce contends that Deborah stands to receive approximately $7,500 from the sale of the home place. In response, Deborah concedes that she will receive these funds, but asserts that she will not have ready access

to her share of the 401(k) money without substantial penalty and tax consequences for early withdrawal.

Finally, Bruce complains that his and Deborah's "earning ability and capacity" is similar, in that they both have a high school education with some college; moreover, he appears to argue that Deborah's financial situation is essentially her own fault, as she has "not applied for any higher paying jobs, has not attempted to further her education, . . . has not applied for any kind of aid that is available to her, and she is not disabled or have any medical conditions that would affect her ability to work or improve her situation." Further, he contends, he has more debt than Deborah does.

■ Despite Bruce's arguments, we cannot conclude that the trial court abused its discretion in awarding Deborah one hundred dollars per month in alimony. As discussed above, the trial court properly concluded that Bruce could afford a sum of $100 per month. In short, the trial court was in the best position to view the parties, and this court has repeatedly held that we will not reverse a finding by a trial court in an equity case unless it was clearly erroneous. *See Hudson v. Kyle*, 365 Ark. 341, 229 S.W.3d 890 (2006); *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). Here, the trial court found that this case was "a prime example of just a limited amount of money and more needs than money." The court simply did not abuse its discretion, and we therefore affirm.