SLIP OPINION

Cite as 2016 Ark. 456

# SUPREME COURT OF ARKANSAS

No. CV–15–850

| | | |
|---|---|---|
| CHRISTOPHER FOSTER | APPELLANT | **Opinion Delivered:** DECEMBER 15, 2016 |
| V. | | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [DR–2013–835] |
| LEAH FOSTER | APPELLEE | HONORABLE MARCIA HEARNSBERGER, JUDGE |
| | | AFFIRMED; COURT OF APPEALS' OPINION VACATED. |

**COURTNEY HUDSON GOODSON, Associate Justice**

This case, which presents an issue of first impression regarding rehabilitative alimony, is before us on a petition for review from the Arkansas Court of Appeals pursuant to Arkansas Supreme Court Rule 1-2(e). Appellant Christopher Foster appeals the divorce decree entered by the Garland County Circuit Court awarding rehabilitative alimony and attorney's fees and costs to appellee Leah Foster. For reversal, Christopher argues that (1) the circuit court erred in its interpretation of the rehabilitative-alimony statute when it applied the factors relevant to permanent alimony to support the award of rehabilitative alimony to Leah; (2) the circuit court abused its discretion by deciding that Leah's proffered plan of rehabilitation supported an award of $408,000 in alimony payable over ten years; and (3) the circuit court abused its discretion by awarding attorney's fees and costs in addition to rehabilitative alimony. We affirm the circuit court.

SLIP OPINION

Christopher and Leah Foster were married on February 12, 2002, and three children were born of their marriage: A.F. (age eleven); E.F. (age seven); and F.F. (age five). Christopher filed a complaint for divorce in September 2013, alleging general indignities. Leah answered and counterclaimed for divorce, requesting alimony, child support, and an unequal distribution of marital assets.

The parties reached an agreement with respect to child custody, visitation, and the disposition of the marital residence, and a hearing was held on March 19, 2014, on the issues of the remaining marital property, child support, alimony, and attorney's fees. Testimony by both parties established that Christopher was the primary source of income for the family, while Leah was the primary caregiver to the children. Christopher testified that he was an independent contractor for a company that sells employee-benefit plans to small businesses. He introduced into evidence his 2011 and 2012 tax returns, which reflected that his average gross income for those years was approximately $163,000. Christopher indicated that his income is around $3,000 per month after all of his expenses are paid and that with the addition of his anticipated child-support payments, he could not afford to pay alimony to Leah. He further stated that Leah had a real-estate license and claimed that there was no reason why she could not work.

On cross-examination, Christopher agreed that Leah transported the children to and from school each day and stayed home with them when they were sick. Christopher explained that the family lived in Hot Springs but that his office was in Little Rock, and he testified that he commuted to Little Rock each day and also traveled throughout the state for work. Thus, he indicated that he was typically unable to take the children to their

extracurricular activities as well. With regard to the monthly expenses listed on his affidavit of financial means, Christopher stated that the family's monthly expenses were approximately $11,000 each month, while his expenses, alone, totaled around $7,000. He agreed that Leah would have additional expenses when she took over the marital residence, including mortgage payments, taxes, insurance, and yard maintenance.

Leah testified that she and Christopher had both agreed that she would be a stay-at-home mother so that the children did not have to attend day care full time. She had graduated from high school but did not have a college degree. While Leah stated that she had obtained her real-estate license in 2004, she indicated that the license had been inactive during much of her marriage due to the births of her children. According to Leah, even when her license was active, she had sold only one or two houses per year, primarily to friends and family members. Information from the parties' 2011 and 2012 joint tax returns indicated that Leah's taxable income from selling real estate was $8,552 and $4,500, respectively. Leah testified that Christopher had paid all of the family's expenses during their marriage and that her income was used only to supplement his income and to pay for vacations. She stated that she had maintained the home, cared for the children, and transported them to and from school and various extracurricular activities. Leah testified that she did not ask Christopher to stay home with the children when they were out of school because he told her that was her job. She further stated that Christopher had told her that she would be on welfare if she were not married to him.

Leah testified that she was asking for spousal support because the child support would not be adequate to support the family's monthly expenses of $6,615 as reflected in her

affidavit of financial means. She stated that there was an economic imbalance between her earning ability and Chris's, indicating that she would be unable to earn a substantial income as a realtor at the present time. According to Leah, the spousal support awarded would need to be higher for the first several years because the children were not old enough to stay at home by themselves, and she would be limited in her employment opportunities. She requested $5,000 per month for the first three years, followed by $2,500 for the next couple of years, when she would have her career started and would be earning more income, and then $2,000 for several more years, at which time the alimony would terminate. She attempted to introduce a written rehabilitative alimony plan; however, Christopher objected to its admission. The circuit court allowed Leah to proffer the plan and to testify about it. She indicated that the $5,000 per month she was requesting in alimony was not even half of his income and that it would be easier for her to grow her real-estate business or to look for other employment as the children got older. She further stated that she had considered extending her education in the future.

In addition to alimony, Leah testified that she was asking Christopher to pay her outstanding legal fees because she could not afford to do so. She introduced an itemized list from her attorney, which included $14,190 in attorney's fees and $647.18 in expenses for the court reporter and for postage.

On cross-examination, Leah agreed that she had a responsibility to earn an income sufficient to provide for her children. However, she indicated that it was difficult for her to sell real estate in her current situation, even on evenings and weekends when Christopher had the children, because she still had to pick up the children from school on weekdays and

care for them until Christopher got home from work. In addition, on weekends, Leah stated that both parents had to work together to juggle the children's activities.

Paul Burge, who worked with Leah at Hot Springs Realty, testified that the real-estate market in Garland County had declined in value over the past seven or eight years. He indicated that realtors who had been selling real estate for ten to twenty years could make a good income but that it was very difficult for realtors who were starting out due to the time it takes to develop contacts and referrals. Burge further testified that realtors at Hot Springs Realty must pay their own monthly dues, advertising expenses, signage, and transportation-related expenses. According to Burge, the real-estate business is not a nine-to-five job, and it requires odd hours. He indicated that only one agent out of thirty-four agents at Hot Springs Realty had earned more than $100,000, and that occurred six years ago.

Following the hearing, the parties submitted proposed findings of fact and conclusions of law at the circuit court's request. Both Leah and Christopher stated in their proposed findings that Leah was requesting $5,000 per month in alimony for the first three years following the divorce, $3,000 per month for the next three years, and $2,500 per month for the last four years. These were also the same amounts that were set forth in Leah's proffered rehabilitative plan, although she had mentioned slightly different amounts in her testimony at the hearing.

The circuit court entered the divorce decree on July 28, 2014. By agreement of the parties, Leah was awarded primary custody of the children, with Christopher receiving three weekend visits with the children each month and one overnight visit each week. The court

SLIP OPINION

calculated Christopher's average monthly income as $10,363, which resulted in a monthly child-support obligation of $2,477. The circuit court also approved the parties' settlement agreement regarding the disposition of the marital residence and the parties' personal property. Per this agreement, Leah was granted the marital residence as her separate property after paying Christopher $35,000 for his share of the equity in the home. The circuit court found that the parties' IRAs were marital property and divided them equally. Christopher was awarded his brokerage accounts in the amount of $219,262.66 as his separate property, while Leah was awarded her bank stock valued at $204,052 as her separate property.

With respect to alimony, the circuit court found that there was an economic imbalance between the parties and that Christopher had been the main source of income for the family. The court stated that Leah had been unable to generate significant income from her occupation as a realtor due to the downturn in the real-estate market and due to her status as the primary caregiver to the children. The court found that the parties had enjoyed a good standard of living while they were married and that Christopher had deposited approximately $12,000 each month into the parties' checking account to pay for the family's monthly expenses. While both parties owned pre-marital property, the circuit court noted that Leah's bank stock was in both her name and her father's name and found that she had no other sources of income, while Christopher had a large income as well as a large amount of easily accessible funds.

Based on the evidence set forth above, the circuit court found that an award of rehabilitative alimony was appropriate under Arkansas Code Annotated section 9-12-312(b)

(Repl. 2015). The circuit court also found that Leah's proposed ten-year rehabilitative plan was reasonable in terms of its duration because it allowed her to transition into the workplace as the children became older and more independent. However, the court stated that Leah's requested amount of alimony was unreasonable. The court thus awarded her a lesser amount of alimony for the first three years in the amount of $4,500 per month, finding that this amount, when combined with child support, was sufficient to sustain her regardless of how much income she was able to generate as a realtor or from a different job. For the following three years, the court awarded Leah $3,500 in alimony, noting that by that time, she should have acquired employment to supplement her income. The court then awarded Leah $2,500 for the final four years. The circuit court concluded that this plan was reasonable in both duration and amount because it allowed Leah to support herself and her household while she established sufficient income as the children grew older and required less immediate care.

In addition to alimony, the circuit court awarded Leah $14,190 in attorney's fees and $647.18 for expenses incurred in litigation. The court found that Leah was not in a financial position to pay her attorney's fees and that Christopher had liquid funds to do so.

Christopher timely appealed the circuit court's award of alimony and attorney's fees to the court of appeals, which affirmed. *Foster v. Foster*, 2015 Ark. App. 530, 472 S.W.3d 151. Christopher then filed a petition for review with this court, alleging that this appeal raises issues of first impression and substantial public interest concerning an award of rehabilitative alimony after the enactment of Act 1487 of 2013. We granted the petition



for review on this basis. When we grant a petition for review, we treat the appeal as if it had been originally filed in this court. *Moore v. Moore*, 2016 Ark. 105, 486 S.W.3d 766.

In his first point on appeal, Christopher argues that the circuit court erred in its interpretation of Act 1487 because it applied the factors applicable to permanent alimony to support the award of rehabilitative alimony to Leah. This is an issue of first impression, as we have not previously had an occasion to interpret the 2013 amendment to Arkansas Code Annotated section 9–12–312(b). We review issues involving statutory interpretation de novo on appeal, as it is for this court to determine what a statute means. *Moore, supra.* However, unless it is shown that the circuit court erred, we will accept its interpretation as correct. *Holbrook v. Healthport, Inc.*, 2014 Ark. 146, 432 S.W.3d 593.

An award of permanent alimony is authorized under Arkansas Code Annotated section 9–12–312(a) (Repl. 2015), which states that when a divorce decree is entered, the circuit court may enter an order concerning alimony as is "reasonable from the circumstances of the parties and the nature of the case." Prior to 2013, section 9–12–312(b) also authorized an award of temporary alimony "under proper circumstances to either party in fixed installments for a specified period of time . . . ." In Act 1487 of 2013, the legislature amended the language in section 9–12–312(b) to provide as follows:

> (b)(1) Alimony may be awarded under proper circumstances concerning rehabilitation to either party in fixed installments for a specified period of time so that the payments qualify as periodic payments within the meaning of the Internal Revenue Code.
> (2) When a request for rehabilitative alimony is made to the court, the payor may request or the court may require the recipient to provide a plan of rehabilitation for the court to consider in determining:
> (A) Whether or not the plan is feasible; and
> (B) The amount and duration of the award.

(3) If the recipient fails to meet the requirements of the rehabilitative plan, the payor may petition the court for a review to determine if rehabilitative alimony shall continue or be modified.

(4) A person paying alimony is entitled to petition the court for a review, modification, or both of the court's alimony order at any time based upon a significant and material change of circumstances.

We have stated that the purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts in each case. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). The primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Kuchmas v. Kuchmas*, 368 Ark. 43, 243 S.W.3d 270 (2006). In addition, the following secondary factors should be considered: (1) the financial circumstances of both parties; (2) the couple's past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each of the parties; (6) the amount of income of each that is spendable; (7) the earning ability and capacity of each party; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition made of the homestead or jointly owned property; (10) the condition of health and medical needs of both husband and wife; (11) the duration of the marriage; and (12) the amount of child support. *Moore, supra.*

Christopher recognizes, correctly, that the above-cited factors are relevant to an award of permanent alimony. However, he contends that the legislature intended by its 2013 amendment for different factors to apply to rehabilitative alimony. He bases his argument on the fact that the amended version of section 9-12-312(b) uses different language than that in section 9-12-312(a). Specifically, he asserts that subsection (a) uses the

language "reasonable from the circumstances of the parties and the nature of the case," while subsection (b) uses the language "under proper circumstances concerning rehabilitation."

Under our principles of statutory interpretation, the basic rule is to give effect to the intent of the legislature. *Moore, supra.* We thus construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* Where the language is plain and unambiguous, we determine legislative intent from the meaning of the language used. *Simpson v. Cavalry SPV I, LLC*, 2014 Ark. 363, 440 S.W.3d 335. A statute is ambiguous only where it is open to two or more interpretations, or where it is of such obscure and doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* We are very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Moore, supra.*

Contrary to Christopher's argument, the language in the amended version of Arkansas Code Annotated section 9-12-312(b) does not indicate that the legislature intended different factors to apply to rehabilitative alimony. Rehabilitative alimony was first recognized by our court of appeals in *Bolan v. Bolan*, 32 Ark. App. 65, 71, 796 S.W.2d 358, 362 (1990), in which it was defined as "alimony payable for a short, but specific and terminable period of time, which will cease when the recipient is, in the exercise of reasonable efforts, in a position of self support." Since then, both this court and the court of appeals have analyzed the concept of rehabilitative alimony utilizing the same factors that are applicable to permanent alimony. *See, e.g., Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999); *Dozier v. Dozier*, 2014 Ark. App. 78, 432 S.W.3d 82; *Dew v. Dew*, 2012 Ark. App.

122, 390 S.W.3d 764; *Whitworth v. Whitworth*, 2009 Ark. App. 410, 319 S.W.3d 269. When construing a statute, we presume that the General Assembly, in enacting it, has full knowledge of judicial decisions under preexisting law. *Corn v. Farmers Ins. Co.*, 2013 Ark. 444, 430 S.W.3d 655. If the legislature had intended for different factors to apply to rehabilitative alimony, it could have expressly indicated so in the language of the amended statute. Furthermore, similar factors have been used by other states in determining whether to award rehabilitative alimony versus another type of alimony. *See, e.g.*, *St. Cyr v. St. Cyr*, 137 A.3d 332 (Md. Ct. App. 2016) (discussing statutory factors such as the parties' past standard of living, their earning ability and capacity, and the duration of their marriage in determining whether rehabilitative alimony was appropriate); *Gnall v. Gnall*, 119 A.3d 891 (N.J. 2015) (holding that the trial court was required to consider all statutory factors in considering whether permanent, limited-duration, rehabilitative, or reimbursement alimony was warranted); *Ward v. Ward*, 755 S.E.2d 494 (W. Va. 2014) (discussing statutory factors applicable to all awards of spousal support); *Mayfield v. Mayfield*, 395 S.W.3d 108 (Tenn. 2012) (same); *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993) (same). *See also* David H. Relsey and Patrick P. Fry, *The Relationship Between Permanent and Rehabilitative Alimony*, 4 J. Am. Acad. Matrim. Law 1 (1988).

Christopher basically admits in his supplemental brief to this court that the traditional factors applicable to alimony are also relevant to the consideration of rehabilitative alimony. He argues that the circuit court should have engaged in a two-step analysis by first finding that the circumstances necessary to support a conventional alimony award exist and then also finding the existence of proper circumstances concerning rehabilitation. However, this

is essentially what the circuit court did in this case. The circuit court found that there was an economic imbalance in the earning power and standard of living of the parties and that Christopher had been the primary source of income for the family. The court also discussed the extent and nature of the assets and resources available to both parties. Because Leah had been a stay-at-home mother for most of the parties' twelve-year marriage, and because the children were still at an age where they needed intensive parental care, the court found that she needed rehabilitative alimony for a certain period of years so that she would be able to transition back into the workforce and earn the amount of income necessary to support herself and her household.[1]

While Christopher argues that these facts are not sufficient to support an award of rehabilitative alimony, our court of appeals upheld a rehabilitative-alimony award under similar circumstances in *Dew v. Dew, supra*, where the wife possessed a veterinary license but had not worked for many years. The circuit court in that case awarded $8,000 per month in alimony for a duration of four years. Further, in *Dew*, the wife was not the custodial parent, and she therefore did not have many of the same barriers to her reentry into the workforce that are present in this case.

We have held that a wife's homemaker status is an appropriate factor to consider in awarding permanent alimony. *See, e.g., Taylor, supra*; *Kuchmas, supra*; *Schumacher v. Schumacher*, 66 Ark. App. 9, 986 S.W.2d 883 (1999). Christopher's argument that this same

---

[1] While Justice Wood's dissenting opinion argues that an award of rehabilitative alimony should address or concern a divorced person's needs to join the workforce and achieve financial autonomy, the circuit court's findings reflect that the alimony awarded in this case was structured in such a way as to address those very issues.

factor is not relevant to a decision whether to award rehabilitative alimony, which is temporary in nature and is awarded for the specific purpose of allowing the spouse to become self-supporting, is not persuasive. Leah had not been an active participant in the workforce for twelve years due to her status as a stay-at-home mother to the parties' children, and she testified that Christopher told her during their marriage that she would be on welfare if she left him. Despite these facts, Christopher argued to the circuit court that Leah was not entitled to any amount of alimony, whether rehabilitative or permanent. This was unreasonable, and the circuit court was correct in considering Leah's history as a homemaker in deciding whether she was entitled to rehabilitative alimony.

Christopher also contends that the circuit court erred in awarding rehabilitative alimony to Leah because she failed to present a rehabilitative plan containing concrete goals and requirements that she must meet in order to become self-sufficient. However, Arkansas Code Annotated section 9-12-312(b) does not mandate that a rehabilitative plan be submitted or approved. Instead, the statute states that a plan "may" be requested by the payor or required by the circuit court.[2] Christopher made no such request in this case. While Leah proffered a written rehabilitative plan, Christopher objected to its admission, and the circuit court sustained the objection. Instead, the court ruled that Leah was allowed to testify about her proposed plan. Contrary to Christopher's argument, there is no

---

[2] We have held that the use of the word "may" instead of "shall" indicates that the statute is permissive or discretionary rather than mandatory. *Hopper v. Garner*, 328 Ark. 516, 944 S.W.2d 540 (1997). Thus, Chief Justice Brill's dissent is incorrect that the circuit court failed to adhere to the "statutory requirement" for a rehabilitative plan. The legislature expressly chose not to make a rehabilitative plan a mandatory prerequisite to an award of rehabilitative alimony; nor did the legislature choose to impose specific requirements on the recipient of rehabilitative alimony, such as education or training.

SLIP OPINION

requirement in the statute that a rehabilitation plan contain specific goals or requirements regarding education or training on the part of the payee. We will not read words into a statutory provision that are not there. *Scoggins v. Medlock*, 2011 Ark. 194, 381 S.W.3d 781. For this same reason, Christopher's claim that the circuit court rendered section 9-12-312(b)(3) meaningless by not requiring a plan with specific and concrete goals is also without merit. This subsection merely allows the payor to petition the court for a review if the requirements of a rehabilitative plan are not being met. The statute does not mandate that a plan be submitted; nor does it require that any plan that is submitted contain specific, measurable requirements.

Christopher further argues that the circuit court failed to find that Leah's proposed plan was "feasible" as required by the statute. Again, however, there is no requirement that a rehabilitative plan be submitted in order to award rehabilitative alimony. Furthermore, the circuit court specifically found after analyzing all of the appropriate factors, including the financial circumstances of both parties, that Leah's proposed plan was reasonable as modified by the court. Thus, the circuit court did not err in its interpretation of section 9-12-312(b) or in its finding that Leah was entitled to rehabilitative alimony under the facts in this case.

In his second point on appeal, Christopher contends that the circuit court erred by awarding Leah a total of $408,000, which included the awards of both rehabilitative alimony and attorney's fees and costs. He specifically argues that the circuit court abused its discretion in setting both the amount and the duration of the alimony award.

An award of alimony is a question within the sound discretion of the circuit court, and we will not reverse the circuit court's decision to award alimony absent an abuse of that discretion. *Brave v. Brave*, 2014 Ark. 175, 433 S.W.3d 227; *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). We have held that the circuit court may make an award of alimony that is reasonable under the circumstances, and the amount of alimony should not be reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty. *Brave*, *supra*. We have further emphasized that the circuit court is in the best position to view the needs of the parties in connection with an award of alimony. *Taylor*, *supra*.

Here, Leah presented evidence that her monthly expenses were $6,615. This was also supported by Christopher's testimony that the family's expenses were approximately $11,000 each month and that he had deposited $12,000 per month in the parties' checking account in order to pay their expenses during the marriage. The circuit court found that it was not unreasonable for Christopher to pay $4,500 per month in rehabilitative alimony for the first three years because this amount, when combined with child support, would be adequate to support Leah and her household for that time regardless of how much income she was able to generate from her employment as a realtor or from another job. The court then reduced the amount of alimony to $3,500 for the following three years, when Leah should have acquired employment sufficient to supplement her income. For the final four years, the alimony award was reduced to $2,500, because the children will grow older and require less intensive care, allowing Leah more opportunity to engage in full-time employment. The circuit court noted that the ten–year period of rehabilitation is

15

appropriate because at the end of that time, the parties' youngest child will still be under eighteen years of age.

While Christopher argues that the circuit court failed to take into account his own monthly expenses, this is incorrect, as the court found that his average income for child-support purposes exceeded $10,000 per month and that he also had easily accessible sources of income from his separate, pre-marital property. Christopher attempts to bolster his contention that the alimony award was excessive in this case by asserting that the total sum Leah will receive during the ten-year period, including the award of attorney's fees, is $408,000. However, based on the circuit court's calculation of Christopher's monthly income, he will have earned $1.2 million during that same ten-year period. Furthermore, it was not unreasonable to allow Leah ten years in which to become completely self-supporting given that she had contributed to the development of Christopher's career during their twelve-year marriage by being the primary caregiver to their three children. Thus, there was no abuse of discretion by the circuit court with regard to the amount or the duration of the rehabilitative-alimony award in this case.

In Christopher's third and final point on appeal, he contends that the circuit court abused its discretion by awarding $14,190 in attorney's fees and $647.18 in litigation-related expenses to Leah. The circuit court has the inherent authority to award attorney's fees in domestic-relations cases, and we will not reverse an award of fees absent an abuse of discretion. *Baber v. Baber*, 2011 Ark. 40, 378 S.W.3d 699. *See also* Ark. Code Ann. § 9-12-309 (Repl. 2015) (attorney's fees in domestic-relations matters). We have also held that the circuit court is in a superior position to determine whether to award fees due to the

court's intimate acquaintance with the record and the quality of the services rendered. *Harrill & Sutter, P.L.L.C. v. Kosin*, 2012 Ark. 385, 424 S.W.3d 272.

Christopher challenges the circuit court's award of attorney's fees based on several alleged errors in the billing statement provided by Leah's attorney. Specifically, he argues that the billing statement does not reflect work that Leah testified was done by an associate, that it charges an hourly fee for a temporary hearing that he contends was instead resolved by an agreed order, and that it does not reflect two payments that had already been made by Leah. He therefore contends that the billing statement was insufficient to support an award of fees because it could not be determined what work was performed, who performed the work, the hourly rate at which the work was performed, or what payments had been made toward the outstanding fees.

None of Christopher's arguments demonstrate an abuse of discretion by the circuit court in its award of attorney's fees. All of these contentions were raised by Christopher but were ultimately rejected by the circuit court, which awarded Leah the full amount she had requested. In addition, as Leah asserted in her proposed findings of fact and conclusions of law, the billing statement included only work performed through mid–March 2014, and it therefore did not include fees for work her attorney did in connection with the divorce hearing, posthearing briefing, or preparation of the proposed order.

Christopher also claims that Leah was not entitled to $647.18 in costs for the court reporter and for postage. He argues that Arkansas Rule of Civil Procedure 54(d) (2016) limits an award of costs to those items listed in subsection (d)(2) and that court-reporter fees and postage are not included in that list. However, Rule 54(d)(2) further states that other

expenses specifically authorized by statute are allowed, and Arkansas Code Annotated section 9-12-309(a)(2) provides that in a divorce action, the circuit court may award either the wife or the husband costs of court, in addition to a reasonable attorney's fee. Thus, the circuit court did not err by awarding litigation-related expenses such as court-reporter fees and postage, in addition to attorney's fees.

The circuit court found that Leah was not in a financial position to pay her attorney's fees, while Christopher had liquid funds to do so. This finding was supported by the evidence presented. Accordingly, the circuit court did not abuse its discretion in awarding Leah her requested amount of attorney's fees and expenses.

Affirmed; court of appeals' opinion vacated.

DANIELSON and WOOD, JJ., concur in part and dissent in part.

BRILL, C.J., dissents.

**RHONDA K. WOOD, Justice, concurring in part and dissenting in part.** I join the majority's decision to affirm the circuit court's award of attorney's fees. However, I depart from the majority regarding the alimony award. The circuit court failed to apply the rehabilitative-alimony statute's plain language. I would accordingly reverse and remand the alimony award. For these reasons, I concur in part and dissent in part.

This appeal involves the alimony statute. The controlling language provides that "[a]limony may be awarded under proper circumstances *concerning rehabilitation* to either party in fixed installments for a specified period of time." Ark. Code Ann. § 9-12-312(b)(1) (Repl. 2015) (emphasis added). This provision was amended in 2013. One of the significant changes was the addition of the phrase "concerning rehabilitation" to this subsection. *See*

2013 Ark. Acts 1487. This appeal now requires us to interpret the meaning of "concerning rehabilitation" for the first time. The basic rule of statutory construction is to give effect to the intent of the legislature. *Moore v. Moore*, 2016 Ark. 105, 486 S.W.3d 766. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* Where the language of a statute is plain and unambiguous, we determine legislative intent from the meaning of the language used. *Id.*

Rehabilitative alimony was discussed by the court of appeals in *Bolan v. Bolan*, 32 Ark. App. 65, 796 S.W.2d 358 (1990). The court defined rehabilitative alimony as "alimony payable for a short, but specific and terminable period of time, which will cease when the recipient is, in the exercise of reasonable efforts, in a position of self support." *Id.* at 67 n.1, 796 S.W.2d at 360 n.1. Rehabilitative alimony is also defined as "[a]limony found necessary to assist a divorced person in acquiring the education or training required to find employment outside the home or to reenter the labor force." *Black's Law Dictionary*, 89 (10th ed. 2014). These definitions indicate that rehabilitative alimony should address, or "concern," a divorced person's needs and requirements to join the workforce and achieve financial autonomy.

The circuit court's award in this case fails to comply with the newly amended alimony statute. Most, if not all, of the court's alimony award has nothing to do with rehabilitation. The prominent failure is the circuit court's decision to award Leah Foster $4500 for the first three years following the divorce. In making this award, the court stated that "[t]his amount of alimony combined with the child support she will receive will give her adequate monthly income to *sustain* her over the next three years, *regardless of how much*

*she is able to generate as a realtor or in another job.*" (Emphasis added.) This portion of the award fails to "concern rehabilitation" in any significant way. Leah will have no incentive during this period to obtain a job or to further her career as a real-estate agent. If anything, this award is a disincentive to self-support because Leah's monthly expenses—$6600—will be fully covered once a $2300 monthly child-support payment is added in. She also did not testify that she planned to use any of this money to fund education or training necessary to start a new career; nor did the court require such. *Cf. Myrick v. Myrick*, 339 Ark. 1, 2 S.W.2d 60 (1999) (affirming an award of temporary rehabilitative alimony that required the husband to pay the wife's tuition for five years).

The circuit court also improperly tied its decision regarding the amount of alimony to the children's ages and Leah's ability to care for them. The court even ends the alimony once the children pass through their formative years. These factors are irrelevant to the amount necessary to assist Leah in obtaining training, education, or advancement in employment. It appears that the court has conflated the factors for child support, permanent alimony, and property distribution with the single, narrow factor for statutory rehabilitative alimony. And I find it impossible that the legislature intended to draw only a temporal distinction between rehabilitative alimony and permanent alimony. In other words, the only difference between the two cannot be that one ends and the other does not. This distinction preceded the 2013 amendment,[1] and so the newly added phrase "concerning rehabilitation"

---

[1]During the pendency of an action for divorce, the circuit court may award funds for maintenance. *See* Ark. Code Ann. § 9-12-309(a)(1)(A)(i). This temporary support is often referred to as "temporary alimony." *See, e.g.*, *Bennett v. Bennett*, 2016 Ark. App. 308, 496 S.W.3d 409; *Webb v. Webb*, 2014 Ark. App. 697, 450 S.W.3d 265; *see also Lewis v. Lewis*,

must mean something more. In my view, rehabilitative alimony must, at all times, promote self-support. It cannot be used to "sustain" a former standard of living, which is the role of permanent alimony. *See Taylor v. Taylor*, 369 Ark. 31, 34, 250 S.W.3d 232, 235 (2007*)*. The circuit court thus erred when it based the rehabilitative-alimony award upon this concern.

I recognize that a circuit court's decision to award alimony is subject to an abuse of discretion standard of review. *Kuchmas v. Kuchmas*, 368 Ark. 43, 45, 243 S.W.3d 270, 271 (2006). But an erroneous or incorrect application of a law can constitute an abuse of discretion. *See Ford Motor Co. v. Nuckolls*, 320 Ark. 15, 894 S.W.2d 897 (1995). Under the 2013 amendment, alimony that has been awarded for a fixed period of time must "concern rehabilitation." The alimony award here does not. The court therefore abused its discretion, and I would reverse and remand on this point.[2]

DANIELSON, J., joins.

**HOWARD W. BRILL, Chief Justice, dissenting.** The award to Leah Foster cannot properly be categorized as rehabilitative alimony. Accordingly, I dissent.

Arkansas has long recognized a court's authority to award alimony. *See* Ark. Rev. Stat., ch. 51, § 9 (1837). When a decree of divorce is entered, the circuit court shall make an order concerning alimony, if applicable, as is reasonable from the circumstances of the parties and the nature of the case. Ark. Code Ann. § 9–12–312(a)(1) (Repl. 2015).

---

222 Ark. 743, 262 S.W.2d 456 (1953) (noting that the allowance of alimony *pendente lite* was within the sound discretion of the chancellor).

[2] Had the majority decided to remand, I would have also instructed the court to consider whether ten years is "short" as discussed by *Bolan*, *supra*.

SLIP OPINION

There is a clear distinction between "permanent" alimony and "rehabilitative" alimony. Permanent alimony is an award for continued maintenance and support of a former spouse. *See, e.g.*, *Brown v. Brown*, 38 Ark. 324 (1881) (noting that alimony is a continuous allotment of sums payable at regular intervals for support of the former spouse). The purpose of permanent alimony is to rectify economic imbalances in earning power and standard of living in light of the particular facts in each case. *See Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). The primary factors to be considered are the need of one spouse and the other spouse's ability to pay. *See Mulling v. Mulling*, 323 Ark. 88, 912 S.W.2d 934 (1996). The circuit court should also consider secondary factors, such as the financial circumstances of both parties; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each of the parties; and the earning ability and capacity of both parties. *Kuchmas v. Kuchmas*, 368 Ark. 43, 243 S.W.3d 270 (2006); *see also Boyles v. Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980) (listing illustrative factors courts have used when fixing the alimony amount). In addition, this court has held that a spouse's status as a homemaker and stay-at-home parent can be a basis for awarding alimony. *See Taylor*, 369 Ark. 31, 250 S.W.3d 232 (alimony to continue until children reach eighteen years of age). In this case, the evidence presented to the circuit court, the findings of the circuit court, and the foregoing factors would support an award of permanent alimony to Leah Foster.

In contrast, rehabilitative alimony, as defined in *Bolan v. Bolan*, 32 Ark. App. 65, 796 S.W.2d 358 (1990), is "alimony payable for a short, but specific and terminable period of time, which will cease when the recipient is, in the exercise of reasonable efforts, in a

position of self support." *Id.* at 67 n.1, 796 S.W.2d at 362 n.1; *see also Page v. Page*, 2010 Ark. App. 188, 373 S.W.3d 408 (noting that the primary purpose of rehabilitative alimony is to afford the recipient a specific period of time in which to become self-supporting). Rehabilitative alimony has been described as a "bridge the gap" measure to aid the recipient spouse in making the transition from married life to being single. *Whitworth v. Whitworth*, 2009 Ark. App. 410, at 7, 319 S.W.3d 269, 272 (Baker, J., dissenting). For example, this court has affirmed a rehabilitative-alimony award of tuition, books, fees, and expenses of the plaintiff at an accredited college, vocational-technical school, or trade school until the plaintiff completed a course of study or for five years, whichever was less. *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999).[1]

The standards for permanent alimony are well established by this court's precedent. But the rehabilitative alimony established by Act 1487 of 2013 has different requirements. *See* Act of Apr. 22, 2013, No. 1487, 2013 Ark. Acts 6579, 6581–82. "Alimony may be awarded *under proper circumstances concerning rehabilitation* to either party in fixed installments for a specified period of time so that the payments qualify as periodic payments within the meaning of the Internal Revenue Code." Ark. Code Ann. § 9-12-312(b)(1) (emphasis added). Under the amended statute, the goal is rehabilitation; there must be a rehabilitative plan for the recipient, established by the court; the plan must be feasible; and the plan must

---

[1] During the pendency of an action for divorce, the circuit court may award funds for maintenance. *See* Ark. Code Ann. § 9-12-309(a)(1)(A)(i). This temporary support is often referred to as "temporary alimony." *See, e.g., Bennett v. Bennett*, 2016 Ark. App. 308, 496 S.W.3d 409; *Webb v. Webb*, 2014 Ark. App. 697, 450 S.W.3d 265; *see also Lewis v. Lewis*, 222 Ark. 743, 262 S.W.2d 456 (1953) (noting that the allowance of alimony *pendente lite* was within the sound discretion of the chancellor).

have requirements for the recipient to fulfill. *See id.* § 9-12-312(b). In addition, if the recipient fails to meet the requirements of the plan, the payor may petition the court for review to determine if rehabilitative alimony shall continue or be modified. *Id.* § 9-12-312(b)(3). For example, if the rehabilitative plan is for the recipient to attend law school, become a lawyer, and thus enhance future earning potential, then the payor may be ordered to pay for tuition and other expenses for the duration of law school. If the recipient later drops out of law school, the payor may seek relief from the court.

Here, there is no rehabilitative plan in the circuit court's order. Leah Foster has no requirements to fulfill. She will receive alimony every month, even if she takes no steps to enhance her future earning potential. She need only wait and patiently watch the movement of hands on the clock and the turn of the calendar page. If the legislature intended the passage of time to suffice as a rehabilitative plan, it could have said so far more precisely. A mere definite term of years is not a plan of rehabilitation.

In this case, Leah Foster did not seek to be rehabilitated. She did not seek funds to change her status from a real estate agent to a real estate broker. She did not seek funds to obtain an advanced college degree. Rather, she sought funds to maintain her current status as a stay-at-home mother, raising her three minor children, and working part-time. The circuit court correctly considered Leah Foster's status as a stay-at-home parent and homemaker, but under the facts and circumstances of this case, the circuit court should have awarded permanent, not rehabilitative, alimony.[2]

---

[2] Nothing in the statute bars a circuit court from awarding rehabilitative alimony in addition to permanent alimony. For example, a circuit court could award permanent

The mistake of the circuit court is threefold: it used the permanent-alimony factors when deciding whether to award rehabilitative alimony; it did not adhere to the statutory requirement for a rehabilitative plan; and it eliminated the payor's right to seek judicial review if the recipient fails to meet the requirements of the rehabilitative plan. In my view, Leah Foster is entitled to permanent alimony. The award here is not rehabilitative alimony and should not be affirmed as such. Awarding permanent alimony under the guise of rehabilitative alimony circumvents the legislative intent in Act 1487.

For these reasons, I respectfully dissent.

*Gill Ragon Owen, P.A.*, by: *Sharon Elizabeth Echols* and *Christopher L. Travis*, for appellant.

*Q. Byrum Hurst, P.A.*, by: *Q. Byrum Hurst*, for appellee.

---

alimony and also award rehabilitative alimony for the period during which the spouse is attending school.