Cite as 2026 Ark. App. 112

# ARKANSAS COURT OF APPEALS

DIVISIONS IV

No. CV-24-801

| | |
|---|---|
| PAUL OLIVER | **Opinion Delivered** February 18, 2026 |
| APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04DR-23-12] |
| V. | |
| MELISSA OLIVER | HONORABLE XOLLIE DUNCAN, JUDGE |
| APPELLEE | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Paul Oliver appeals from the decree of divorce entered by the Benton County Circuit Court on September 5, 2024. On appeal, Paul argues that the circuit court erred in the amount and duration of alimony awarded to appellee Melissa Oliver. We affirm.

Paul filed a complaint for divorce in January 2023. The parties married in 2004 and separated in January 2022. At the time of the divorce filing, the parties' three children were seventeen, fourteen, and eleven. An agreed temporary order was entered on May 31, 2023. The order provided that Melissa would retain primary custody of the parties' minor children subject to Paul's right to visitation pursuant to the standard visitation schedule. Melissa maintained exclusive use and

possession of the marital residence. Paul would be responsible for the monthly mortgage obligation on the marital residence and would pay temporary support of $500 a week.[1]

At the outset of the August 8, 2024, final divorce hearing, the parties declared they had reached an agreement on the division of marital property, the sale of the marital residence, and the division of Paul's retirement accounts. The parties also agreed to grounds for divorce based on eighteen months' separation.

Paul testified that the parties share two minor children, ages sixteen and thirteen. Their eldest child reached majority while the case was pending. Paul stated that since the parties' separation, he has exercised visitation with the minor children pursuant to their agreement. Paul testified that he has made the mortgage payments on the marital home and paid monthly support as agreed between the parties.

Paul works as a business manager for rug manufacturer Mabel's Rugs, a supplier vendor for Walmart. He has held the position for eleven years. Paul stated that for "pure economic" reasons, he resides in a two-bedroom apartment that he shares with the parties' adult daughter. He said that he has been clean and sober for the past two years.

Paul testified that pursuant to the affidavit of financial means he submitted into evidence, his total monthly gross income is $12,633.31. He stated that his weekly pay is $2,682.71; his base salary is $139,500.92; and his annual bonus was $8,498.85, for a total annual gross income of $147,999.77. His adult daughter reimburses him $200.00 a month for her cell phone and insurance, and he receives

---

[1]The agreed order refers to the $500 weekly payment only as temporary support. The transcript from the temporary-settlement-agreement hearing defines temporary support as "a combination of child support, spousal support[.]"

an additional $100.00 a month for his cell phone, which totals $3600.00 a year. Paul testified that his total gross annual income is $151,599.77, and he intends to remain at his current job.

Paul's financial affidavit listed monthly expenses of $9,400. He testified that his monthly expenses include the rent payment for his apartment, the mortgage payment on the marital home, support payments to Melissa, $2,300 in household expenses that include food costs and cleaning supplies, $200 for his smokeless tobacco/dip habit, and $400 for fuel and vehicle maintenance. Paul testified that he drives a 2023 Toyota Tacoma truck that was purchased after the parties separated; the monthly payment is approximately $650.

Melissa testified that she is employed full time as a childcare provider at a local daycare and is paid $17.00 an hour for a monthly gross income of $2,946.67. She previously made $14.00 an hour at a different daycare; however, she had to find a higher wage job to "get by."

Melissa stated that she was primarily a stay-at-home mom throughout the parties' marriage. When Paul moved into her home in 2002, she provided babysitting services in the home. She continued to do so until 2012 to earn income while Paul finished college. Melissa was heavily involved in the children's school and sports activities and took them to all their doctor's appointments. Melissa acknowledged that Paul coached youth baseball but clarified that sometimes he coached teams that his children were not on, which kept him away from home and the children even more.

Melissa stated that she was not permitted to have a career. She wanted to go back to college to be a school counselor; however, Paul said her "place was to be at the home raising the children." Melissa testified that she tried numerous times to have jobs outside the home, but Paul made sure they were not permanent. She stated that Paul believed her "job was fully for our kids and that's it."

3

Melissa testified that although during the parties' separation Paul paid $500 a week in support plus the mortgage on the marital residence for a total of $3,200 a month, she still struggled financially. She stated that she had been unable to work full time because of the children's schedules and had to rely on credit cards to pay for groceries and bills. Now that she is working full time, finances have improved, but she is "still living paycheck to paycheck," and she is "budgeting and shuffling around to get everything paid." Melissa said that without the $3,200 in support, she would not be able to "make it" and she would have to get a second or third job. She also stated that, with no assistance from Paul, she pays the expenses for the parties' sixteen-year-old son's truck, including his vehicle insurance, gas, tires, and oil changes.[2] She expressed that those expenses were not included in her affidavit of financial means because the form was filled out before the vehicle was purchased. Melissa asked the circuit court to keep the same level of support in place in perpetuity and award "an amount up to $3,200.00 in total, depending on what [the] child support award ends up being[.]"

Melissa testified that, throughout the marriage, Paul's excessive consumption of alcohol kept him away from home most nights. On the nights he was home, he was drunk, angry, and aggressive.

Emma Kate, the parties' adult daughter, testified that they have been separated for more than eighteen months and that Paul is a resident of Benton County, Arkansas. She acknowledged that Paul was often not present in the home during the marriage.

---

[2]Melissa testified that she paid cash for the vehicle; there is no monthly payment.

Kaylee Housman, Melissa's daughter from a previous relationship,[3] testified that Paul "wasn't around" much while she was growing up. She stated that, from the age of ten until she moved out on her own at the age of eighteen, Paul was home only one or two nights a week.

Shawna Hodges, Melissa's friend, also testified. She stated that she was regularly present during the parties' marriage. She said that Paul "was never home," and when he was, he was outside drinking.

The attorney ad litem addressed the court and stated that it is apparent that for the majority of the parties' marriage, Paul was not present, even after work hours ended. He chose not to participate in his family. The ad litem stated that, during the marriage, Melissa was "beyond the primary caretaker," and she parented alone.

The circuit court found that Paul chose not to be present during the marriage and pursued his career while Melissa raised the children. Melissa was granted primary custody of the parties' minor children subject to Paul's standard visitation. Paul was ordered to pay monthly child support of $1,051 per the chart. The circuit court ruled that spousal support was necessary, finding that the parties were married for seventeen years, and "it's kind of late for [Melissa] to be trying to now establish a career." Paul was ordered to pay spousal support in the amount of $3,510 for fourteen years. The parties were ordered to sell the marital home and split the proceeds, divide Paul's retirement accounts equally, and equally share the marital debt.

Paul moved for a new trial, arguing that the circuit court erred in calculating the amount of spousal support awarded to Melissa. He contended that the amount of alimony awarded substantially

---

[3]Jackson Suggs, Melissa's son from a previous relationship, also testified. Because his testimony is not pertinent to the issue of alimony, it is not included herein.

exceeded Melissa's need after considering her income from employment and the child support awarded. Paul timely filed a notice of appeal and a substituted and amended notice of appeal after his motion for new trial was deemed denied.

On appeal, Paul challenges the circuit court's award of spousal support. He "agrees that an award of reasonable alimony for a reasonable period of time is appropriate under the circumstances." However, he argues that the circuit court erred in setting the amount of alimony and in ordering him to pay the award for fourteen years. Paul contends that both the monthly amount and the duration of the alimony payments are unreasonable.

We review domestic-relations cases de novo on the record.[4] A decision regarding alimony is a matter that lies within the circuit court's sound discretion and will not be reversed on appeal absent an abuse of that discretion.[5] An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration.[6] The circuit court is in the best position to view the needs of the parties in connection with an alimony award.[7]

Arkansas Code Annotated section 9-12-312(a)[8] states that the circuit court may enter an order concerning alimony that is reasonable from the circumstances of the parties and the nature of the case. The purpose of alimony is to rectify the economic imbalance in earning power and standard

---

[4]*Nauman v. Nauman*, 2023 Ark. App. 41, 660 S.W.3d 598.

[5]*Hiett v. Hiett*, 86 Ark. App. 31, 158 S.W.3d 720 (2004).
[6]*Webb v. Webb*, 2014 Ark. App. 697, 450 S.W.3d 265.

[7]*Rawls v. Yarberry*, 2018 Ark. App. 536, 564 S.W.3d 537.

[8](Repl. 2020).

of living in light of the particular facts in each case, and the primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay.[9] There are secondary factors that may also be considered: (1) the parties' financial circumstances; (2) the parties' past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each party; (6) the amount of income of each party that is spendable; (7) the parties' earning ability and capacity to earn; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition of the homestead; (10) the parties' respective health and medical needs; (11) the duration of the marriage; and (12) the amount of child support.[10]

Notably, in arguing that the circuit court abused its discretion by awarding Melissa $3,510 a month in alimony, Paul does not dispute his ability to pay the awarded alimony. Instead, he focuses his challenge on Melissa's financial need. In support, Paul points to Melissa's testimony requesting that the court award alimony in an amount up to the $3,200 she received as temporary support during the parties' separation. Paul explains that the temporary support represented a combined spousal and child-support figure. Yet here, the circuit court not only exceeded that amount but also ordered that he pay child support per the chart guidelines—$1,051 a month—in addition to the already excessive award, for a total support obligation of $4,561. Paul asserts that by increasing his support

---

[9]*Foster v. Foster*, 2016 Ark. 456, 506 S.W.3d 808.

[10]*Trucks v. Trucks*, 2015 Ark. App. 189, 459 S.W.3d 312.

obligation to Melissa by $1,361 a month, the award far exceeds the maximum she asked for and thus constitutes an abuse of the circuit court's discretion.

Insofar as Paul contends that his temporary support obligation to Melissa was $3,200.00 a month, the record demonstrates otherwise. Paul was ordered to pay $500.00 a week; this equals $26,000.00 a year or $2,166.67 a month. Paul was also responsible for the mortgage on the marital home that Melissa occupied. According to Melissa's affidavit, the mortgage payment was $1,350.00 a month. Thus, relying on these figures, during the parties' separation, Paul's support obligation was $3,516.67 a month, an amount squarely in line with the $3,510.00 alimony amount that the circuit court awarded.

Per Melissa's testimony and the financial means affidavit she submitted into evidence, she earns $2,946 a month from her employment at a daycare. She listed monthly expenses of $6245. Subtracting her expenses from her income, Melissa's income falls $3,299 short of her needs. Furthermore, Melissa testified that during the pendency of the parties' divorce, she had financial struggles, even with the temporary support she was receiving from Paul. She stated that she was living paycheck to paycheck and often had difficulty covering all of the expenses. Although Melissa's total expenses included the mortgage payment amount that Paul paid, the home was to be sold, and Melissa would have to take on an uncertain mortgage or rental payment. Moreover, Melissa stated that, without aid from Paul, she covers the vehicle insurance, fuel, and maintenance costs for the parties' sixteen-year-old son. She testified that these costs were not included in her listed expenses because the vehicle was purchased after she submitted her affidavit of financial means. We give due deference to the circuit court's superior position to determine the credibility of witnesses and the

weight to be given their testimony.[11]  The amount of alimony has never been reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty.[12] The circuit court can make an award of alimony that is reasonable under the circumstances.[13]  Here, we hold that the alimony award was reasonable under the facts of the case, and the circuit court did not abuse its broad discretion.

To the extent Paul argues that the circuit court should have subtracted his child-support obligation from any alimony amount awarded, we find no abuse of discretion.  Paul correctly identified child support as a secondary factor that the circuit court may consider when making an alimony award; however, we have held that it is not mandatory for the circuit court to consider the secondary factors.[14]

Paul also argues that the duration of the alimony was unreasonable.  He contends there is "no rhyme or reason" for the fourteen-year award.  He further disputes the finding that it is too late for Melissa to seek additional education, establish a career, and enjoy a better quality of life.  He argues that Melissa has a strong work ethic, and she is no longer limited by his desire for her to stay home with their children.  Paul asserts that Melissa has both the desire and the capacity to improve her earning potential and standard of living; thus, she should have been awarded rehabilitative alimony

---

[11]*Walls v. Walls*, 2014 Ark. App. 729, 452 S.W.3d 119.

[12]*Kuchmas v. Kuchmas*, 368 Ark. 43, 243 S.W.3d 270 (2006).

[13]*Brave v. Brave*, 2014 Ark. 175, 433 S.W.3d 227.

[14]*See Trucks*, 2015 Ark. App. 189, 459 S.W.3d 312.

for a reasonable period of time. Instead, the circuit court's "arbitrary decision to award Melissa alimony for fourteen years is an abuse of discretion" that this court should reverse.

Arkansas recognizes rehabilitative and permanent alimony. Rehabilitative alimony is alimony that is payable for a short, specified duration of time.[15] The primary purpose of rehabilitative alimony is to afford the recipient a specific period of time in which to become self-supportive.[16] However, courts are not required to limit alimony duration to rehabilitative periods, particularly in long-term marriages where one spouse has limited earning capacity.[17]

In its oral ruling, the circuit court stated:

> I find spousal support to be necessary; it's a 17-year marriage. [Paul], as I said, pursued his career while [Melissa] raised the kids. We're to a point now where it's kind of late for her to be trying to now establish a career. So, I am going to order spousal support for 14 years, terminated by death, remarriage or cohabitation, $3,510.00 per month. Child support per the chart.

Here, the circuit court found there was an economic imbalance in the earning power of the parties, and Paul had been the primary source of income for the family during the parties' long-term marriage. Considering our case law, these factors would support an award of permanent alimony. However, here, the circuit court limited alimony to a specific term of years—, which is less than it had the authority to award under these facts.

Further, because, at Paul's insistence, Melissa had been a stay-at-home mom for most of the seventeen-year marriage, she was prevented from continuing her education, and she raised the

---

[15]*Page v. Page*, 2010 Ark. App. 188, 373 S.W.3d 408.

[16]*Id.*

[17]*See Vigneault v. Vigneault*, 2010 Ark. App. 716, 379 S.W.3d 566.

children alone while Paul was largely absent from the home, the court found that she needed alimony for a period of years to earn the income necessary to support herself and her household. We have held that a wife's homemaker status is an appropriate factor to consider in awarding alimony.[18] Additionally, Melissa is the custodial parent, which undoubtedly creates certain barriers, making it more difficult to transition back into the workforce. The circuit court has the authority to set the duration of the award of alimony subject to the parties' ability to petition for a subsequent modification based on a material change of circumstances.[19] Paul's assertion that the alimony duration is unreasonable because the court provided no basis for the term of fourteen years is unpersuasive. He has provided and we have found no case law requiring the court to do so. We hold that the fourteen-year award of alimony was reasonable under the circumstances presented here, and the circuit court has not abused its discretion.

Affirmed.

ABRAMSON and THYER, JJ., agree.

*Putman Law Office*, by: *William B. Putman*, for appellant.

*Tim Cullen*, for appellee.

---

[18]*See Foster*, 2016 Ark. 456, 506 S.W.3d 808.

[19]*See Trucks*, 2015 Ark. App. 189, 459 S.W.3d 312.